DEFENDANTS' EXHIBIT I

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
# ENFORCEMENT AND INVESTIGATION DIVISION

## SPECIAL EDUCATION DUE PROCESS HEARING

## CONFIDENTIAL

### HEARING OFFICER'S DETERMINATION

STUDENT: Delonta Anthony          DATE OF BIRTH: 3/12/89

ADDRESS: 251 V Street, N.W.
Washington, D.C. 20001

PRESENT SCHOOL ATTENDING: Francis J.H.S.
HOME SCHOOL: Francis J.H.S.

DATE OF FIRST HEARING: May 2, 2005
LEGAL MEMORANDA FILED: May 9, 2005
DATE OF HEARING ON COMPENSATORY EDUCATION: October 26th 2005
TESTIFIED AT THE HEARING:

Dr. Sheila Iseman          Educational Consultant
David Emenheiser*          Director, High Road Upper School
Jennifer Murphy            Clinical Director, Positive Nature, Inc.
(* Testified by telephone)


Student's Representative: Tracy Goodman, Esq.
The Children's Law Center
Address: 901 15th Street, N.W.
Washington, D.C. 20005
FAX: 202-467-0053

School System's Representative: Stephanie Ramjohn-Moore, Esq. (Did not attend Oct. 26th hearing on compensatory education)
Address: 825 N. Capitol Street, N.E., Washington, D.C. 20002

## INTRODUCTION:

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on May 2, 2005, at the request of Tracy Goodman, counsel for the parent and the student. Stephanie Ramjohn Moore represented DCPS, the other party to this hearing. An HOD was issued on May 4th 2005 ordering DCPS to place and fund the student at The High Road Upper School of Washington. This hearing officer requested both counsels for the parties to submit legal memoranda by May 9th 2005, on the issue of compensatory education and in particular what is appropriate compensatory education under the recent *Reid v. District of Columbia* decision by the U.S.D.C. Circuit Court of Appeals at 2005 WL 678385, 2005 U.S. App.LEXIS 4934, and whether the D.C. three year statute of limitations applies. Both counsels submitted legal memoranda on time. The May 19th 2005 Interim Order continued the case for at least ninety days at his new placement at High Road Upper School to develop current fact specific information on his current educational levels and current individualized assessments for determining compensatory education pursuant to *Reid*. A hearing was held on October 26th 2005 to gather the above evidence as well as testimony on how to deliver compensatory education if awarded. The Student Hearing Office had provided written notice to counsel for both parties on the scheduled hearing. After waiting for over a half hour after the scheduled hearing time without counsel for DCPS appearing, this hearing officer commenced the hearing on the compensatory education issue.

## JURISDICTION:

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq.; and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446) and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

## ISSUE:

1. Is the student entitled to compensatory education?

## DOCUMENTS SUBMITTED BY DCPS:

None

## DOCUMENTS SUBMITTED BY STUDENT FOR OCTOBER 26TH HEARING:

DA-41-DA-47

**FINDINGS OF FACT:**

1. The High Road Upper School of Washington prepared a document done after the October 6th 2005 IEP meeting stating the student's current levels of academic performance. The document stated, "Grade Equivalent Approximations: Math Calculations 5.3; Broad Reading 6.6; Reading Comprehension 5.0" (DA-43) The last previous academic performance testing of the student was the psychological testing report of Howard University Hospital on April 9th 2004. At that time, the student tested at 5.2 grade level for Broad Reading, 3.5 grade level for Mathematics Reasoning and 2.9 grade level for Reading Comprehension. (DA-1)

2. The High Road Upper School did not formally test the student on his current levels of academic performance when he first enrolled last May 2005. High Road Upper School did a clinical summary of the student on June 16th 2005 that stated: "Delonta's progress at HRUS since his enrollment in May has been fair. Delonta has shown improvement in his math skills and reading skills…Overall, Delonta appears to be benefiting from the HRUS program. He does well in the small classroom setting and requires the one on one attention he is able to get in the classroom." (DA-41) The Director concurred that the student's progress continues to be fair. The Director testified that the student does not have self-organization skills and would benefit from tutoring. (Testimony of Mr. Emenheiser)

3. The student's first quarter progress report this school year showed he received Ds in English, World History, and Biology and the teachers' commented that he missed assignments and needs to focus more. He received a C in math and a B in Foreign Language which was Sign Language. He was absent seven days with four unexcused and three excused.(DA-46)

4. The Director HRUS testified that the student's current social/emotional functioning is guarded. The student is withdrawing from his peers, but interacts better with adults. The student shows several delays in interactions with his peers and is disconnected from them. He demonstrates poor social skills. He is improving somewhat on his social emotional level. He entered the school being on the red level which is the lowest level and he is now low average on the yellow level. Average is green, above average is blue and gold is the highest level. He has shown improvements in deescalating his behavior and there have been less removals from class. Last year he was more frequently out of class. (Testimony of Mr. Emenheiser) Dr. Iseman testified that she agrees with Mr. Emenheiser's comments on his social emotional status based on her observation on October 11th 2005, at HRUS.

5. The student can attend the Positive Nature, Inc. program after school. Positive Nature offers tutoring in reading from graduate students from the University of Maryland's Reading Program. The students receive tutoring services on a daily basis in accordance with their IEP goals and objectives. Positive Nature has students from High Road School. Positive Nature also has staff including a consulting psychiatrist, counseling psychologists and a clinical social worker to provide support for students' social emotional needs. DCPS Transportation drops students off after school with their program and then Positive Nature has transportation to return the students to their homes. The hours of the after school program are from after three until they close at seven p.m. The program includes students ages 14 to 18 and they currently have 45 students in their program. (Testimony of Ms. Murphy, DA-47)

6. The student's IEP for the 2004-2005 School Year has been found in the May 4th HOD to be inappropriate for not being based on current levels of educational performance and not having social emotional goals for the student who has been classified as a student with emotional disturbance DCPS made no showing that it fully implemented the above November 18th 2004 IEP. The student's report card indicated he was only receiving ten hours a week of specialized instruction even though his IEP called for 15 hours a week and DCPS made no showing that the student received the related services required by his IEP. (HOD of May 4th 2005, Findings of Fact #3)The above HOD also found that the placement at Francis J.H.S. was inappropriate because the student did not make educational progress. (HOD of May 4th 2005, Findings of Fact #4). The HOD determined that the inappropriate IEP and inappropriate placement resulted in a denial of a Free Appropriate Public Education (FAPE). (HOD of May 4th 2005)

7. The student's October 10th 2003 IEP for the 2003-2004 School Year cut his specialized instruction in half from 16.5 hours to 8.35 hours and reduced his counseling by thirty minutes a week from the previous IEP without any explanation or justification in the MDT Notes. (DA-11) The IEP also contained no speech and language goals and no reading goals. The social emotional goals were not measurable or appropriate. There was also no Behavior Intervention plan. The student also did not receive the speech and language therapy and psychological counseling related services required in the above IEP. (DA-33, Testimony of Dr. Iseman) The student also did not make educational progress as indicated in his 2003-2004 Report Card. (DA-27) The student received a left leg fracture in early September 2003 when he was pushed down the steps by another student at Shaw J.H.S. and because of the injury did not attend school until January 2004. DCPS granted his counsel's request for a transfer to another school and DCPS transferred him Francis J.H.S. (DA-31) DCPS offered no evidence that it provided any home instruction including specialized instruction pursuant to his IEP in the above period. The student was

4

denied a FAPE for the 2003-2004 School Year because both the IEP and placement were inappropriate.

8. The student's Report Card of June 25th 2004 at Francis J.H.S. for the 2003-2004 School Year starting in the second advisory and ending in the fourth advisory showed the following absences: 23 in Algebra, 9 in American History, 10 in Reading Comprehension, 22 in Physical Science and 7 unexcused homeroom absences. (DA-27) The student's Report Card of July 8th 2003 at Shaw J.H.S. for the 2002-2003 School Year showed the following absences: 32 in Math Resource, 6 in Reading Comprehension and 11.5 unexcused homeroom absences. (DA-26)

## DISCUSSION AND CONCLUSIONS OF LAW:

Counsel for the parent argues in her legal memorandum of May 9th and at the October 26th 2005 hearing that the student is entitled to eight years of compensatory education from 1997 until the student's placement at The High Road Upper School of Washington on May 10th 2005, pursuant to the HOD of May 4th 2005. Counsel for DCPS argues in her legal memorandum of May 9th 2005 that DCPS did not fail to provide services to the student but that the "student missed services that were provided to him by his own volition."

Congress for the first time in the *Individuals with Disabilities Education Improvement Act of 2004, (IDEA 2004)* applies a two year Statute of Limitations to alleged violations, unless a state has an explicit time limitation for presenting a complaint under IDEA. *Section 615 (b) (6) (B)* states:

> An opportunity for any party to present a complaint –which sets forth an alleged violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this part, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph

Prior to IDEA 2004, federal district courts in the District of Columbia applied, in the absence of an explicit time limitation in D.C. statutory or regulatory law for complaints alleging violations of IDEA, the "catch all" D.C. three-year statute of limitations at D.C. Code Section 12-301 (8). *See Wingfield v. District of Columbia, Civil Action No. 00-121, (June 21st 2000) and Hammond v. District of Columbia, 2001 U.S. District of Columbia, 2001 U.S. Dist Lexis 25846 (D.D.C. 2001).* (Judge Green in *Wingfield* applied the "catch all" three year Statute of Limitations and did not find that either the continuing violation doctrine or equitable tolling doctrine applied to the facts, but in *Hammond*, Judge Kessler found the continuing violation doctrine applied.)

5

The legislative history to *IDEA 2004* clearly shows that Congress intended to place a statute of limitations on compensatory education claims. The House Report stated as follows:

> The Act currently has no statute of limitations and leaves local educational agencies open to litigation for the entire length of time a child is in school, whether or not the child has been identified as a child with a disability. Local educational agencies are often surprised by claims from parents involving issues that occurred in an elementary school program when the child may currently be a high school student. Such an unreasonably long threat of litigation hanging over a local educational agency forces them to document every step they take with every child, even if the parents agree with the action, because they could later change their mind and sue. The fear of far-removed litigation raises the tension level between the school and the parent. Prolonged litigation breeds an attitude of distrust between the parents and the school personnel and has the effect of requiring school personnel to document conversations, rather than working cooperatively to find the best education placement and services for the child.
>
> The bill includes a statute of limitations of one year from the date of the violation. This change will align the Act with other Federal statutes that have explicit statutes of limitations (e.g., civil rights claims, Federal tort claims, Social Security) and allow for timely resolution of issues. Parents, or their advocates, often wait to bring actions until many years after discovering a concern. The child's education is usually jeopardized by this strategy. A statute of limitations alleviates unnecessary claims for compensatory education and allows local educational agencies to limit unnecessary paperwork designed to protect them from protracted long-term litigation. H. R. Rep. No. 108-77, Improving Education Results for Children with Disabilities Act of 2003, at 115-116. (April 29th 2003)

The Senate Report stated:

Section 615 (f) (3) (D) creates a new two year timeline for requesting a hearing on claims for reimbursed or ongoing compensatory education services. If the State has developed an explicit timeline for requesting a due process hearing either through statute or regulation, the State provision will apply. The bill also provides for exceptions to the timeline in limited instances. The committee does not intend that common law determinations of statutes of limitation override this specific directive or the specific State or regulatory timeline. S.1248, S. Rep.No. 108-185, Lexis Nexis (TM) Congressional Document at 26 of 270 (Nov. 3rd, 2003)

This hearing officer concludes that IDEA 2004's two year statute of limitation applies to this case to bar claims before March 25, 2003, which is two years before the filing of this due process complaint.

While compensatory education is not a remedy expressly identified in IDEA, courts have awarded it in appropriate circumstances by exercising their authority under 20 U.S.C. Section 1415 (i) (2) (B) (iii) and IDEA 2004 at Section 615 (i) (2) (C) (iii) to "grant such relief as the court determines appropriate." The Supreme Court in *Florence County School District Four v. Carter*, 510 U.S. 7 at 16 stated: "Under this provision, 'equitable considerations are relevant in fashioning relief,' *Burlington*, 471 U.S. at 374, 105 S.Ct., at 2005, and the court enjoys 'broad discretion' in so doing, id. at 369, 105 S. Ct. at 2002. Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required." In *Reid*, The D.C. Court of Appeals held: "Consistent with Congress's stated aim of 'ensur[ing] that the rights of children with disabilities and parents of such children are protected,' see 20 U.S.C. Section 1400 (d) (1) (B), we therefore join our sister circuits and hold that compensatory education awards fit comfortably within the 'broad discretion' of courts fashioning and enforcing IDEA remedies, *see Carter*, 510 U.S. at 15-16." *Id.* at 20

In determining the ultimate compensatory education award, the D.C. Court of Appeals in *Reid* stated: "In every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Id.* at 22 This hearing officer has determined that DCPS denied a FAPE to the student from March 25th 2003 until his placement at The High Road Upper School on May 10, 2005 pursuant to the HOD of May 4, 2005. (See Findings of Fact #6 & #7) Pursuant to the dictates of *Reid* to make a fact-specific inquiry on an award of compensatory education, this hearing officer took additional evidence on October 26th 2005 to determine the student's current academic and social performance since attending High Road Upper School and what compensatory education services would be necessary. The testimony of the Director of the HRUS and the documents submitted by the school indicate the student has shown improvement in his math and reading skills and his academic progress is fair. HRUS did not test the student for his levels of academic performance when he first entered HRUS on May 10th 2005. The previous academic performance testing of the student was the psychological testing report of Howard University Hospital on April 9th 2004. At that time, the student tested at 5.2 grade level for Broad Reading, 3.5 grade level for Mathematics Reasoning and 2.9 grade level for Reading Comprehension. (DA-1) The High Road Upper School of Washington prepared a document done after the October 6th 2005 IEP meeting stating the student's current levels of academic performance. The document stated: "Grade Equivalent Approximations: Math Calculations 5.3; Broad Reading 6.6; Reading Comprehension 5.0" (DA-43) Both Dr. Iseman and the Director of HRUS testified that reading comprehension was the major academic weakness for the student. From April 9th 2004 to the middle of October 2005, the student made over a two grade level improvement from 2.9 to 5.0 in Reading Comprehension; over a one grade improvement from 5.2 to 6.6 in Broad Reading; and from a 3.5 grade level in Mathematics Reasoning to a 5.3 grade level in Math Calculations. These improvements support HRUS conclusions that the student is making progress in math and reading at HRUS. With more individual tutoring as recommended by both Dr. Iseman and the

Director of HRUS, the student should be able to substantially improve and "make up for prior deficiencies". *Id.* at 19 The student has also shown some improvement in his social emotional status, but it is still "guarded". The Director of HRUS testified the student started their school at the lowest behavioral level and has progressed at the current time to the next level. While he is making some progress on his social emotional problems including improvements in deescalating his behavior and less removals from class, continued counseling is necessary. (See Findings of Fact #4) At the present time, HRUS does not provide the after school tutoring and counseling the student needs. This hearing officer concludes that Positive Nature, Inc. can provide the after school individual tutoring and counseling the student needs along with his education at HRUS to make up for prior deficiencies. (See Findings of Fact #5) Based on the student's academic progress between the Howard University Report in April 2004 and the recent October report from HRUS, two school years of Positive Nature tutoring along with the HRUS program should provide the "educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Id.* at 22 The current evidence shows some progress in his social emotional status at HRUS, but there is still a need for further counseling to address his social emotional issues that were not properly addressed by DCPS. While it is difficult to predict with precision in the social emotional area, two school years of additional counseling from Positive Nature along with the HRUS program could make up for prior deficiencies. (See Findings of Fact #6 & #7)

The Court in *Reid* also stated: "In addition, courts have recognized that in setting the award, equity may sometimes require consideration of the parties' conduct..." *Id.* at 22. This hearing officer is troubled by the pattern of unexcused absences of the student as shown in Findings of Fact #8 and which is continuing over at HRUS where he had seven absences including four unexcused absences in the first quarter. (See Findings of Fact #3) If the student continues to have unexcused absences, the award of compensatory education may be modified.

It is hereby **ORDERED** that:

**The student is awarded two school years of compensatory education in the form of after school tutoring and counseling to be provided by Positive Nature, Inc. and funded by DCPS.**

**High Road Upper School shall send a copy of the student's second quarter progress report including the student's attendance record through counsel for the parent to this hearing officer at the Student Hearing Office.**

8

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

Seymour DuBow, Esq.
Impartial Hearing Officer

Date Issued: 11/7/05

Date filed: November 4, 2005