# CERTIFICATION OF RECORD

INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### *STUDENT HEARING OFFICE*
#### SPECIAL EDUCATION

In the Matter RE:  A██████, D█████ vs. Francis Junior High

Case Information:     Hearing Dates: **05/02/2005**
Held at: **District of Columbia Public Schools Headquarters**
                    **825 N. Capitol Street, N.E.**
                    **Washington, D.C. 20002**
Student Identification Number: **8334307**
Student's Date of Birth: ████/1989
Attending School: **Francis JHS**
Managing School: **Francis JHS**
Hearing Request Date(s) **03/25/2005 Amended 04/25/2005**

## <u>CERTIFICATION OF RECORD</u>

I, **Shawnta Maddox, Legal Assistant of the Student Hearing Office**,

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting of all letters, pleadings, orders,

exhibits and depositions.

I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this 31st day of May 2006.

**LEGAL ASSISTANT**
**STUDENT HEARING OFFICE**

# STUDENT HEARING OFFICE OF THE DISTRICT OF COLUMBIA
## REQUEST FOR MEDIATION/HEARING

➤ This form shall be used to give notice to the District of Columbia Public Schools and/or a District of Columbia Public Charter School of parental disagreement with the identification, evaluation or educational placement of their child with a disability, or the timely provision of a free appropriate public education to that child, and to request a hearing and/or mediation regarding the same.

➤ This form must be sent to the Student Hearing Office of the District of Columbia, 825 North Capitol Street, N.E., 8ᵗʰ Floor, Washington, D.C. 20002.  Fax number 202-442-5556

Federal law requires that when a parent or representative requests mediation, it shall be offered at no cost to the parent. Mediation may be beneficial in your case. Please indicate your decision:

___ I REQUEST MEDIATION   ___ I REQUEST MEDIATION AND A HEARING   X I REQUEST A HEARING

## STUDENT FOR WHOM MEDIATION/DUE PROCESS HEARING IS REQUESTED

Student Name: D_____ A_____                     DOB: _____89

Address: _____ Washington, DC 20001
Present School of Attendance:              Home School:
Francis JHS                                (Neighborhood school where child is registered)
                                           Francis JHS

## COMPLAINT IS MADE AGAINST:   DCPS
DCPS and/or D.C. Public Charter School-specify charter school

## INDIVIDUAL REQUESTING MEDIATION/DUE PROCESS HEARING

Name: Corine Anthony

Address: _____ Washington DC 20001

Phone: (H)_____ (W) N/A      (Fax) N/A

Relationship to Student: X Parent ___ Self ___ Legal Guardian ___ Parent Surrogate ___ Public Agency

## PARENT REPRESENTATIVE/ATTORNEY/ADVOCATE (if applicable):

Name: Tracy L Goodman     Phone: (W) (202) 884-3141 (Fax) (202) 884-4730
Address: The Children's Law Center (202) 467-4900 x 503
         901 15ᵗʰ St. NW, Suite 500
         Washington DC 20005

Form 101

02/01/2003



1. You must indicate three (3) dates when you and your representative (if you have one) are available within the next twenty (20) days for mediation (if you are requesting mediation) and/or three (3) dates within the next 35 days (or 30 days if you represent a student enrolled at ETS or Rock Creek Academy) when you, your representative, and witnesses will be available to appear for a hearing (if you are requesting a hearing). Please indicate whether you are available in the AM, PM, or both on the identified dates. **4 hour slot Requested** ⋆

Hearings: __April 18, 2005__     __April 21, 2005__     __April 27, 2005__ ⋆

Mediation: _____     _____     _____

**FOR ALL DCPS STUDENTS, IF YOU PROPOSE DATES MORE THAN 35 DAYS FROM THE DATE OF YOUR REQUEST, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING OFFICER DETERMINATION WITH 45 DAYS OF THIS REQUEST. IN THE CASE OF A WAIVER, THE STUDENT HEARING OFFICE WILL CONTINUE TO USE BEST EFFORTS TO ISSUE A HEARING OFFICER DETERMINATION WITHIN 45 DAYS OF YOUR REQUEST (OR AS CLOSE TO 45 DAYS AS IS POSSIBLE).**

**FOR STUDENTS ATTENDING ETS OR ROCK CREEK ACADEMY, IF YOU PROPOSE DATES BEYOND THE 30-DAY PERIOD, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING WITHIN THAT PERIOD.**

Every effort will be made to accommodate your requested dates. Please be aware that proposed hearing dates which fall fewer than 21 days from the date of your request are difficult to accommodate. Your dates are most likely to be available if you propose hearing dates between 21 and 35 (or 30, for students enrolled at ETS or Rock Creek Academy) days from the date your request is received and docketed by the Student Hearing Office.

If none of your proposed dates are available, or if you fail to specify any dates, the Student Hearing Office will schedule your hearing for the first available date. Upon receipt of a Hearing Notice confirming the date of your hearing, you will have an opportunity to file a Motion for Continuance, if necessary, by using the form Motion attached to your Hearing Notice. *Please do not contact the Hearing Office by phone to request a continuance. Only the Hearing Officer assigned to your case is authorized to grant requests for continuances.*

Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled. Failure to report for the hearing may result in dismissal of this case, or in a default decision against you. Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing, with copies to the Special Education Student Hearing Office.

2. Special Accommodation Requests for Mediation/Due Process Hearing (please be specific):

   Interpreter
   ___ Foreign Language _____
   ___ Sign Language _____
   ___ Other _____

Form 101

02/01/2003

Special Communications _____
Special Accommodation for Disability _____
Other _____
_____

3.  In accordance with the Individuals with Disabilities Education Act (IDEA), please answer below:
    (You may attach additional pages to provide more information if needed.) *Please see attached.*

    Describe the nature of the problem:



    Describe issues to be addressed at the mediation and/or hearing, with specificity:



    Describe relevant facts relating to the problem:



    State how you would like to see the problem corrected:


    _____        *3/25/05*
    Signature of Applicant/Parent (Required)        Date (Required)


### MAIL, FAX, OR DELIVER APPLICATION TO:
**Student Hearing Office of the District of Columbia**
828 North Capitol Street, NE, 8th Floor
Washington, DC 20002            FAX: (202) 442-5556


**FOR OFFICE USE ONLY:**
Case Number: _____
Student ID#: _____

Form 101

                                        Revised 02/01/2003


Form 101

                                        02/01/2003

4

**REQUEST FOR HEARING, D████ A████ (DOB:███89)**

**3. In accordance with the Individuals with Disabilities Education Act (IDEA), please answer below:**

**a) Describe the nature of the problem.**
DCPS is currently denying D████ A████ a free and appropriate education ("FAPE") and has denied D████ FAPE for over three years. For specific issues and relevant facts, please see below.

**b) Describe the issues to be addressed at the mediation and/or hearing.**
The central issue to be addressed is the past and continuing failure of DCPS to provide D████ A████ with FAPE. More specifically, the issues are, but not necessarily limited to the following: (1) Has DPCS failed to develop appropriate IEPs for D████?; (2) Has DCPS failed to implement appropriate IEPs for D████?; (3) Has DCPS failed to provide an appropriate educational placement(s) for D████?; (4) Has DCPS failed to provide D████ with the appropriate special education and related services he requires?; (5) Has DCPS failed to develop and/or implement an appropriate behavior intervention plan for D████?; (6) Has DCPS failed to conduct timely and/or adequate re-evaluations of D████?; (7) Has DCPS failed to adequately consider, offer and/or provide Extended School Year ("ESY") services to D████?; (8) Did DPCS wholly and/or in a timely manner fail to locate, identify, and/or fully and appropriately evaluate D████?; and finally, (9) Has DCPS failed to comply with the requirements of the No Child Left Behind Act by not providing D████ with supplemental services?

**c) Describe the relevant facts relating to the problem.**
D████ A████ is a mentally fragile sixteen year old boy in need of extensive special education services. D████ is diagnosed with Chronic Paranoid Schizophrenia, suffers from a speech and language impairment and functions cognitively in the borderline range. D████ educational placement and services are inappropriate and do not meet his unique needs.

In September 2003, D████ was pushed down the steps at Shaw Junior High School and suffered a left leg fracture that required ongoing medical care and visiting instruction services. Because of this severe bullying incident, D████ was enrolled at Francis JHS in January 2004 pursuant to a discretionary transfer sought by Ms. Anthony and granted by Ralph Neal. D████ is doing poorly academically, socially and behaviorally at Francis JHS. Alarming because of his psychiatric diagnosis, D████ is often roaming the school halls, staying in the principal's office or spending time with the security officer, isolating himself from other students, and remains a target for bullying. Recently, D████ suffered a black eye, scratches and ripped clothes during a fight at Francis JHS. Francis JHS personnel have stated their agreement that Francis is not an appropriate placement for D████ yet DCPS has not taken appropriate action to help this young man.

D████ current IEP dated November 18, 2004 is inappropriate and is not being implemented as written. D████ requires a full-time therapeutic special education placement including psychological counseling and speech/language therapy to meet his severe special needs and to adequately and safely address his significant psychiatric problems and his difficulties with

5

learning: the current IEP fails to meet these requirements. Furthermore, the current IEP is not being implemented as written, as upon information and belief, D██████ is not receiving the specified number of hours of specialized instruction nor is he receiving psychological counseling or speech and language therapy as required by this IEP. D██████ also did not receive these necessary related services during the prior school year at Francis. Moreover, DCPS has not developed and/or implemented an appropriate behavior intervention plan for D██████, which he requires.

Due to the missed services during SY 2003-2004, staff at Francis JHS indicated D██████ would receive compensatory education during ESY 2004, but upon information and belief, no compensatory education or ESY services were provided to D██████ in ESY 2004, nor has any compensatory education been provided this current school year.

DCPS has failed to wholly and timely re-evaluate D██████. D██████ triennial evaluations are overdue. The most recent psychological evaluation is dated May 14, 2001 and the most recent speech and language evaluation is dated July 11, 2001. Moreover, D██████ adoptive mother Ms. Anthony signed a consent for evaluation on November 18, 2004, and upon information and belief, DCPS has still not conducted the evaluations.

D██████ IEP dated October 3, 2003 is inappropriate because of its failure to provide D██████ with the appropriate level of specialized instruction and related services. Furthermore, upon information and belief, this IEP was not being implemented as written at Francis JHS, as D██████ did not receive psychological counseling or speech and language therapy as required by the IEP. Moreover, upon information and belief, DCPS did not implement the behavior intervention plan attached to this October 23, 2003 IEP nor did DCPS develop an appropriate behavior intervention plan for D██████.

The past IEPs dated September 1, 2001 and May 5, 2002 are also inappropriate because of their failure to provide D██████ with the appropriate level of specialized instruction and related services that he required. The IEP for school year 2002-2003 was missing from the records provided to parent's counsel.

Despite D██████ extensive disabilities, D██████ was never located or identified by DCPS as a child in need of special education prior to 2001, contrary to Child Find requirements. At the time of D██████ initial placement, D██████ disability classification was speech and language impairment, a disability which should have been identified by DCPS earlier in D██████ life. Furthermore, upon information and belief, D██████ severe social/emotional/psychological needs were not reflected in D██████ disability classification until October 2003.

Finally, DCPS has failed to provide D██████ with supplemental educational services pursuant to the No Child Left Behind Act. Francis JHS was identified as a "school in need of improvement" as it has not made adequate yearly progress for two consecutive years. As such D██████ is entitled to receive supplemental education services. D██████ applied in a timely fashion but never received any supplemental services.

2

6

**d) How would you like to see the problem corrected?**

First, DCPS must immediately place and fund D███████ Anthony at an appropriate non-public fulltime special education program because DCPS has no such program. Second, the staff at D███████ new placement shall develop an appropriate IEP for D███████. Third, D███████ requires compensatory education for the amount of time that DCPS failed to provide him with an appropriate education.

3

# THE CHILDREN'S LAW CENTER, INC.
## THE HEALTH ACCESS PROJECT AT CNMC

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Sharon Newsome | FROM: Tracy Goodman |
| COMPANY: DCPS Student Hearing Office | DATE: 3/25/2005 |
| FAX NUMBER: (202) 442-5556 | TOTAL NO. OF PAGES INCLUDING COVER: 7 |
| PHONE NUMBER: | |

RE:

Hearing Request for D▬▬
A▬▬ DOB ▬▬/89

X URGENT    X FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

. Please note that a four hour time slot is requested.

THE CHILDREN'S LAW CENTER
901 15TH STREET NW, 5TH FLOOR
WASHINGTON, DC 20005
(202) 884-3141 (PHONE)
(202) 467-4949 (FACSIMILE)

# The CHILDREN'S LAW CENTER

April 25, 2005

Sharon Newsome
DCPS Student Hearing Office
825 North Capitol St., N.E., 8th Floor
Washington, D.C. 20002

*Transmitted by fax to 202-442-5556*

Re: **Amendment to Hearing Request for D___ A___ DOB ___/89**
**Hearing Date: 5/2/05 at 1:00 pm and 3:00 pm**

Dear Ms. Newsome:

I am writing to amend the hearing request that was filed for D___ A___ on March 25, 2005.

First, please amend part 3(d) of the hearing request by replacing the first sentence as follows: "First, DCPS shall immediately place and fund D___ A___ at the High Road School, an appropriate fulltime special education placement that will meet D___ special needs."

Second, please further amend part 3(d) of the hearing request to include the following: "Fourth, DCPS shall fund an independent clinical psychological evaluation and an independent speech/language evaluation, the provider to be selected by the parent."

Third, incorrect dates are identified for two of the past IEPs referenced in part 3(c) of the hearing request. Please amend the facts to include the correct dates which are September 19, 2001 and May 15, 2002, not September 1, 2002 and May 5, 2002.

Fourth, please amend part 3(c) of the hearing request to include the following facts that are relevant to the Child Find violation allegation (issue #8 in 3(b) of the hearing request): D___ report cards dating back to SY 97-98 demonstrated severe deficiencies in reading, math and other academic subjects, as well as unsatisfactory work habits and personal and social skills. D___ SAT-9 scores dating back to 1997 also demonstrated below basic levels in reading and math.

Sincerely,

Tracy L. Goodman
Attorney for Corine Anthony, parent

cc: K. Herbert, Office of General Counsel, DCPS (transmitted by fax to (202) 442-5098)

901 15th Street NW  •  5th Floor  •  Washington, DC  20005
Phone (202) 467-4900  •  Fax (202) 467-0053  •  www.childrenslawcenter.org

9

# THE CHILDREN'S LAW CENTER, INC.
## THE HEALTH ACCESS PROJECT AT CNMC

---

### FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
|---|---|
| Sharon Newsome | Tracy Goodman |

| COMPANY: | DATE: |
|---|---|
| DCPS Student Hearing Office | 4/25/2005 |

| FAX NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
|---|---|
| (202) 442-5556 | 2 |

PHONE NUMBER:

RE:
Amended Hearing Request for
D████ A████████, DOB ██████/89

**X URGENT**    **X FOR REVIEW**    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

TRANSMISSION VERIFICATION REPORT

```
                                        TIME  : 04/04/2005 11:06
                                        NAME  : STUDENT HEARINGS OFF
                                        FAX   : 2024425556
                                        TEL   : 2024425432
                                        SER.# : BROH3J608601
```

```
DATE,TIME           04/04  11:05
FAX NO./NAME        98844730
DURATION            00:00:15
PAGE(S)             01
RESULT              OK
MODE                STANDARD
                    ECM
```

# District of Columbia Public Schools
## *Office of Compliance*
# STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

| MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |

TO:     Parent (or Representative): _T. GOOD MAN_     Fax No.: _884 - 4730_

      LEA Legal Counsel: _K. HERBERT_

RE:     _A_____, D_____ and (LEA) DOB: _____/89_
            Student's/Name

FROM:   _SHARON NEWSOME_
          Special Education Student Hearing Office Coordinator

DATE SENT: _4/4/05_

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_3/28/05_. Please be advised that the hearing has been scheduled for:

      DATE: _5/2/05_

      TIME: _1:00 PM_

11

```
                    TRANSMISSION VERIFICATION REPORT

                                          TIME  : 04/06/2005 09:28
                                          NAME  : STUDENT HEARINGS OFF
                                          FAX   : 2024425556
                                          TEL   : 2024425432
                                          SER.# : BROH3J608601
```

```
    DATE,TIME                    04/06  09:28
    FAX NO./NAME                 94670053
    DURATION                     00:00:17
    PAGE(S)                      01
    RESULT                       OK
    MODE                         STANDARD
                                 ECM
```

# District of Columbia Public Schools
## *Office of Compliance*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556

X REVISED COPY

### HEARING NOTICE

MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): _T. GOODMAN_    Fax No.: _467-0053_

LEA Legal Counsel: _K. HERBERT_

RE:    _A██████, D█████_    and (LEA) DOB: _█████89_
       Student's Name

FROM:  _SHARON NEWSOME_
       Special Education Student Hearing Office Coordinator

DATE SENT: _4/6/05_

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

DATE: _5/2/05_

TIME: _1:00 PM & 3:00 PM_

AT:  825 North Capitol Street, NE, Washington, DC

12



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of the Superintendent*
**Office of the General Counsel**
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002-4232
202-442-5000  Fax # 202-442-5098
*www.k12.dc.us*

**To:**  **Seymour DuBow, Esq., Hearing Officer**
**From:**  **Stephanie Ramjohn Moore, Esq.**

**Date:**  **May 9, 2005**

**RE:**  **Due Process Hearing,  DA, DOB: ████89**

A due process hearing conducted on May 2, 2005, wherein the Hearing
Officer, Seymour DuBow allowed the parties to submit memorandum distinguishing
the instant matter to *Reid v. District of Columbia* (2005) on the award of
compensatory education in administrative due process hearings and the hearing
officer's duty in making a finding of such an award.

In *Reid,* the Court of Appeals determined that compensatory education "must
be reasonably calculated to provide the educational benefits that likely would have
accrued from special education services the school district should have supplied in the
first place." The Court rejected the parents and the administrative hearing officers'
formulas as they were not "fact-specific exercise of discretion" and that a finding
allowing an award of 810 hours of compensatory education without a determination
that was based on an actual determined need of the student.

In the instant case, Plaintiff's counsel's formula predetermines the amount of
7200 hours (8 years) of compensatory education based upon an alleged denial of

FAPE that encompassed 8 years (8*900 hours of school) without any educational benefit to the student. DA is a student that was enrolled at Francis JHS and was found eligible for services on September 19, 2001 as a Speech and Language impaired student. At the time of his determination, an Individualized Educational Program (hereinafter IEP) was developed by the MDT team (including DA's parent) with the student receiving 5 hours of Specialized Instruction and 1 hour of Speech and Language Therapy. An IEP/MDT meeting was held on May 15, 2002 at which time the team determined the student was to continue to receive these services and addressed the concerns of both the parent and DA's teacher and increased DA's services to 10 hours of Specialized Instruction and 1 hour of counseling as a related service. Another MDT convened on October 2, 2002 and addressed DA's issues again contemplating the need to increase DA's hours of related services. On October 2, 2003, another IEP was developed changing the student's disability from Speech and Language Impaired to Emotionally Disturbed adding counseling to his IEP for 1 hour per week. Finally on November 18, 2004 an IEP was developed giving the student 15 hours of Specialized Instruction and 1 hour of Speech and Language and 1 hour of counseling per week.

Since the time of his eligibility determination, DCPS has offered Specialized Instruction and related services to DA. Through the proffer of his own attorney and witness testimony, it was offered that DA does not attend class occasionally and has refused services in the past. DCPS should not be held accountable for services and under the _Reid_ finding of the court, compensatory education should not be determined by a "cookie cutter formula, but rather an *informed and reasonable* exercise of

discretion regarding what services he needs to elevate him to the position he would have occupied absent the school district's **failure**."

It is DCPS' contention that there has been no failure, simply because a student missed services that were provided to him by his own volition, there must be a fact-finding determination of the failure of DCPS to determine what, if any, compensatory education should be granted based on a failure to provide services.

Office of Student Hearings
District of Columbia Public Schools
825 North Capitol St., N.E.
Washington, D.C. 20002



Corine Anthony                          )
on behalf of D████ A█████               )       Due Process Hearing:  May 2,
                                        )       2005
DOB: ███/89                             )
                                        )       Hearing Officer:  Seymour DuBow,
        v.                              )       Esq.
                                        )
                                        )
District of Columbia Public Schools     )
_____ )

## POST-HEARING MEMORANDUM ON COMPENSATORY EDUCATION AWARD SOUGHT BY THE PARENT

On May 2, 2005, a due process hearing was held for D████ A█████. The

parent argued that: (1) DPCS failed to develop and/or implement appropriate IEPs for

D████, (2) DCPS failed to provide an appropriate educational placement(s) for D████

for eight years; (3) DCPS failed to provide D████ with the necessary special education

and related services he requires; (4) DCPS failed to develop and/or implement an

appropriate behavior intervention plan for D████; (5) DCPS failed to conduct timely

and/or adequate re-evaluations of D████; (6) DCPS failed to adequately consider, offer

and/or provide Extended School Year ("ESY") services to D████, and (7) DPCS wholly

and/or in a timely manner failed to locate, identify, and/or fully and appropriately

evaluate D████ contrary to Child Find requirements.  At the due process hearing, DCPS

presented no witnesses and had no documentary evidence, thereby not satisfying their

burden of proving they provided FAPE to D████.  The Hearing Officer granted the

parent's request for a directed verdict.  See HOD Conclusions of Law.  Furthermore,

16

D████ current IEP and placement were both found to be inappropriate by the hearing officer. See HOD Findings of Fact #2-#6; Conclusions of Law. The issues left for the hearing were the (1) appropriateness of the parent's proposed placement, the High Road Upper School, and (2) the request for compensatory education, which included the Child Find claim. As pertaining to the first issue, High Road Upper School was found to be appropriate and DCPS was ordered to place and fund D████ at High Road immediately. HOD Finding of Fact # 7; Conclusions of Law; Order #1. At the close of the hearing, the hearing officer ordered counsel for the parties to submit post-hearing memoranda in reference to the compensatory education issue, specifically as to whether the three year statute of limitations bars some of the parent's claim and whether case law supports the compensatory education award sought by the parent. The parent hereby submits post-hearing memorandum on the issue of compensatory education and asks the hearing officer to award D████ A████ 7200 hours of compensatory education services, to include but not be limited to individual academic tutoring, therapeutic summer programs, individual psychological counseling services, and extended special education eligibility. This remedy is necessary to compensate D████ and make up for the deficiencies in his education for the past 8 years.

## DENIAL OF FAPE FROM SY 1996-1997 THROUGH PRESENT[1]

### Violation of Child Find—SY 1996-1997 through September 19, 2001

DCPS violated the Individual with Disabilities Education Act's ("IDEA") Child Find requirements by not timely locating, evaluating or identifying D████ prior to September 2001 and thus denying D████ a free and appropriate public education

---

[1] The ending date for the denial of FAPE is the date D████ begins at High Road Upper School, hopefully by May 10, 2005. Undersigned counsel submitted a letter to DCPS, Maureen Anderson on May 3, 2005 and May 5, 2005 requesting transportation services for D████. As of May 6, 2005, it is not clear whether DCPS has made the necessary arrangements to transport D████ to and from High Road Upper School.

2

("FAPE"). D███████ should have been identified by SY 1997-1998 at the very latest. (Testimony of Dr. Sheila Iseman; DA-15 through DA-18). D██████ is a severely disabled student, with a significant speech and language impairment and substantial mental health problems that strongly impact his social/emotional/behavioral functioning and his ability to learn. (DA-1 through DA-6; Testimony of Dr. Sheila Iseman). DCPS presented no evidence whatsoever in reference to the timely location, identification, and evaluation of D██████ or in reference to the provision of FAPE to D██████ prior to September 2001.[2] DCPS failed to meet its burden in showing that its actions were appropriate with respect to timely providing D██████ with a FAPE and more specifically, with respect to timely and wholly locating, identifying, and evaluating D██████. As DCPS had the burden of proof, its lack of evidence necessitates a finding for the parent on this issue. DCMR § 3030.3 Furthermore, DCPS' utter dearth of evidence is contrasted to the parent's detailed documents and expert testimony provided by Dr. Sheila Iseman, all of which support the parent's claim that DCPS denied FAPE by not locating, evaluating and identifying D██████ by SY 1997-1998 at the latest.

DCPS is required to ensure that all children with disabilities ages 3 to 21 who reside in the District of Columbia have a FAPE available to them and that the rights of these disabled children and their parents are protected. DCMR § 3000.1 (2003); DCMR §3002.1(a) (2003); 20 U.S.C. § 1400(d)(1). The Child Find provisions in both the IDEA and the federal and local regulations place an affirmative duty on the District of Columbia to identify, locate, and evaluate all children with disabilities residing in the jurisdiction. 20 U.S.C. 1412(a)(3); 34 C.F.R. § 301.25; DCMR 3002.1(d) (2003); See also Department of Education, State of Hawaii v. Cari Rae, 158 F. Supp. 2d 1190 (Haw.

---

[2] DCPS presented no evidence whatsoever, so all of the parent's evidence remains unrebutted.

3

Dist. Ct. 2001); Handberry v. Thompson, 219 F. Supp. 2d 525, 540 (S.D.N.Y. 2002). A necessary means to ensuring that these legal requirements are met is to have an adequately functioning Child Find program in place as mandated by the IDEA and the local regulations. DCMR § 3002.1 (2003); 20 U.S.C. § 1412. Child Find is not a discretionary program, it is an obligation—as such, the District of Columbia and DCPS must have had procedures and policies in place to ensure that D███████ a child with a disability, was timely located, evaluated and identified.

At the hearing, DCPS did not meet its burden of proving that it complied with the Child Find requirements and provided D█████ with a FAPE in a timely manner. DCPS presented no evidence whatsoever in reference to DCPS's Child Find program or why, if it is in existence, it was not utilized to timely identify D██████ before the beginning of his 5th grade year, SY 2001-2002, when D██████ was 12 years old.

As the administrative record demonstrates, D██████ is a child with significant mental health problems, a diagnosis of Chronic Paranoid Schizophrenia, severe speech and language deficits and severe emotional and behavioral problems in the school setting. DA-1 through DA-6; DA-18, 20, 22, 24, 25; Testimony of Dr. Sheila Iseman. D██████ should have been identified as a student with special education needs long before September 2001. First, D██████ speech and language deficits are developmental in nature and therefore should have been identified in the developmental phase long before the beginning of D██████ fifth grade year[3], when D██████ was 12 ½ years old. Dr. Iseman specifically testified that D██████ speech and language impairment must have been present in kindergarten, SY 1994-1995. Testimony of Dr. Iseman. As such, DCPS

---

[3] By SY 2001-2002, D█████ should have been in seventh grade based on his age, but he had been retained twice. DA-18; DA-22.

4

should have identified D█████ at that point in time. Testimony of Dr. Iseman.

Furthermore, not only should the speech and language impairment have been identified

much earlier than 2001, the parent presented overwhelming evidence that proved D█████

should have been identified as a student with a disability by SY 1997-1998 at the very

latest based on his school performance. DA-15 through DA-24; Testimony of Dr.

Iseman. D█████ SAT-9 student report for SY 1996-1997, D█████ second grade year,

shows he was below basic in reading and math, meaning he has "little or no mastery of

fundamental knowledge and skills" for his grade level. DA-15. Dr. Iseman testified that

D█████should have been referred for special education services during this school year.

D█████ SAT-9 student report for the following school year, SY 1997-1998, also

displays below basic scores in all areas. DA-16, 17. The 3rd Grade Report Card issued in

SY 1997-1998 also shows D█████was below the instructional level in reading and math

in each of the advisories. DA-18. Furthermore, the teacher notes indicate D█████ was

displaying disruptive behaviors, such as inappropriate socialization, lack of self-control,

as well as a lack of focus when not under close supervision. DA-18. D█████ was

retained at the close of this school year. DA-18. Dr. Iseman again clarified that based on

D█████ performance in school both academically and behaviorally, that DCPS should

have identified D█████ during SY 1997-1998. Testimony of Dr. Iseman. Sadly,

D█████ experience his second time around in 3rd grade, SY 1998-1999, offered no

improvements: D█████once again struggled academically and behaviorally, obtaining

below basic in writing, listening, speaking, social studies and unsatisfactory marks for

most of his work habits and personal/social skills. DA-19, 20. Dr. Iseman testified that

DCPS should have identified D█████during this school year SY 1998-1999. Neither

5

did DCPS satisfy its obligations to D██████ during SY 1999-2000 when D██████ was in

the fourth grade. Again, D██████ was unable to master even a "basic working knowledge

of skills/concepts" and "seldom produce[ed] work of satisfactory quality," and was below

basic in reading and math on his SAT-9. DA-21, 22. D██████ teacher was "very

concerned" about his classroom behavior. DA-22. Dr. Iseman testified D██████ should

have been identified during SY 1999-2000, however that did not occur and DCPS

retained D██████ for the second time. Testimony of Dr. Iseman; DA-22. D██████

second attempt at fourth grade, SY 2000-2001, was no different from the previous four

years, as he continued to struggle with learning and behavioral problems. DA-23, 24.

D██████ was referred for evaluations in January 2001, but no services were provided to

him until September 2001 despite alarming psychological evaluations and a speech and

language evaluation indicating D██████ has a severe language disorder. (DA-4 through

DA-6).

The parents overwhelming unrebutted evidence therefore establishes DCPS

violated Child Find in a most egregious fashion by not identifying D██████ prior to

September 2001. Even in the face of dramatic and consistent below basic academic

performance combined with increasingly disturbing displays of impaired social/emotional

functioning, DCPS did absolutely nothing for D██████. Regrettably, DCPS continued to

shirk its responsibilities to D██████ even after finally identifying him as a student

requiring special education services on September 19, 2001.

<u>Denial of FAPE from September 19, 2001 through the Present</u>

Furthermore, even once D██████ was identified as a child who required special

education services, DCPS did not provide him with FAPE, continuing the violation of

6

IDEA. To the present moment, DCPS has never provided D▨▨▨ with an appropriate IEP or educational placement, and has further violated IDEA but not implementing the IEPs as written. D▨▨▨▨ initial IEP dated September 19, 2001 (DA-7) was inappropriate because: D▨▨▨ did not receive the level of specialized instruction that he required, only getting five hours when he needed special education services in reading, math, written expression, social/emotional and speech and language; there was no counseling nor any social/emotional goals, even though DCPS's own evaluations recommend it (DA-3, 5) and in fact there was no acknowledgment whatsoever of D▨▨▨▨ significant difficulties with social/emotional functioning; there was no Behavior Intervention Plan ("BIP"), and no provision or consideration of Extended School Year ("ESY"). DA-7; Testimony of Dr. Iseman.

The second IEP created for D▨▨▨▨ dated May 15, 2002 was also inappropriate. DA-8; Testimony of Dr. Iseman. This IEP was inappropriate because: once again the speech and language impairment was the only disability reflected on the IEP; there was no provision of counseling or therapeutic interventions contrary to recommendations by psychologists and D▨▨▨▨ needs; it did not provide D▨▨▨▨ with the level of specialized instruction he required, only giving him 10 hours when he needed more; there was no BIP; and there was no consideration or provision of ESY services. Testimony of Dr. Iseman.

The IEP dated October 2, 2002 was also inappropriate for many of the same reasons. DA-10; Testimony of Dr. Iseman. D▨▨▨did not receive enough specialized instruction; there was no BIP and no provision of ESY services. Although DCPS finally recognized D▨▨▨▨ social/emotional problems by changing his classification from

7

speech language impairment ("SLI") to emotional disturbance, there was no justification provided for dropping the SLI classification. Testimony of Dr. Iseman.

The IEP dated October 3, 2003 (DA-11) was also inappropriate. This IEP cut D█████ services in half with no justification; it reduced his psychological counseling; it provided no speech and language goals, no reading goals and did not provide a BIP or ESY services. Furthermore, this IEP was not implemented by DCPS as D█████ received no psychological counseling or speech and language therapy during SY 2003-2004. Testimony of Dr. Iseman; see also DA-33. To compound the turmoil already endured by D█████ this lack of therapeutic intervention continued despite D█████ suffering a serious injury resulting from a school bullying incident that required his mid-year transfer to a new school. See DA-30, 31 and 32.

Finally, the current IEP, DA-12, is inappropriate for many of the same reasons stated above. Testimony of Dr. Iseman. There are no speech and language goals; there are no social/emotional goals; there is no BIP; and there is no consideration or provision of ESY services. DA-12. Furthermore, the entire IEP was based on out-dated evaluations. In addition, 15 hours of specialized instruction is not enough as D█████ requires full-time services. Testimony of Dr. Iseman; DA-1. Moreover, D█████ did not receive the full 15 hours both because he is not scheduled for it and because D█████ was so socially/emotionally impaired that he avoided attending some of the classes. Testimony of Dr. Iseman. To make matters worse, once again DCPS did not provide D█████ with psychological counseling or speech and language therapy. Testimony of Dr. Iseman.

8

The overwhelming unrebutted evidence outlined above proves that D███████ was denied FAPE from SY 1996-1997 through the present. Because of the lack of an appropriate education over these years, D███████ made no academic progress and lost the opportunity to develop appropriate social skills and engage in healthy social interactions with peers and teachers. Due to the deficiencies in his education, compensatory education is required to make up for what this child lost and to attempt to put him in a position where he would have been but for the deficiencies. See *infra* p. 11-16.

## PARENT'S CLAIMS NOT BARRED BY THE STATUTE OF LIMITATIONS[4]

The parent's claim that there was a denial of FAPE from SY 1996-1997 through the present is not barred by the three year statute of limitations in IDEA cases. The parent does not dispute that there is a three year statute of limitations applied to due process hearing requests in IDEA cases. *Hammond v. District of Columbia*, 2001 U.S. Dist. LEXIS 25846 (D.D.C. 2001); D.C. Code § 12-301 (8). Ms. Anthony argues that her claim is timely under the continuing violation doctrine. A continuing violation is "one that could not reasonably be expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." See *Hammond*, at *15 quoting *Taylor v. FDIC*, 132 F.3d 753, 756 (D.C. Cir. 1997). The general rule in IDEA cases is that a claim accrues when the parent is in possession of "critical facts" alerting her to an injury and to DCPS's responsibility. *Id.* at *16. Mere knowledge of a child's disability does not mean that a parent should know the education is inappropriate. *Id.* In *Hammond*, the court concluded that it was the totality of DCPS's inaction from before the limitations period and

---

[4] March 25, 2002 is three years prior to the filing of the due process hearing request in this matter, therefore the time period preceding March 25, 2002 is the time period in question in reference to the statute of limitations argument issue raised by the hearing officer.

9

thereafter which constituted an on-going denial of FAPE. Here, D█████'s low educational performance and struggle with learning during second grade, two years in third grade and two years in fourth grade were charted in SAT-9 reports and report cards. Teacher notes sent home tell Ms. Anthony that her son is struggling yet the notes do not suggest special education testing or referral, instead making recommendations for summer programs, suggesting a parent-teacher conference to discuss strategies to improve behavior, and offering a few words of encouragement and hope. DA-18, 22, 24. Then even once D█████ was identified as needing special education services on September 19, 2001, DCPS ignored its own recommendations and the alarming evidence of severe mental illness and provided no therapeutic interventions for this child, as well as providing him with only 5 hours of services when D█████ required special education in reading, math, written expression, social/emotional and speech and language. DA-3 through DA-7. It is the very nature of the Child Find violation combined with the prolonged denial of FAPE even after the child was identified that makes it a continuing violation, as the legal breach is DCPS's *inaction*. In other words, the continuing violation is DCPS not identifying D█████ in a timely fashion and then not providing him with the level of services he required once identified-- there was no single action by DCPS during the period prior to March 25, 2002 that was "of such a singular or obvious nature that it should have alerted" Ms. Anthony that D█████ "...rights were being violated and that she needed to request a hearing." *Hammond* at 17. There is no evidence that Ms. Anthony was ever in possession of critical facts alerting her to injury and to DCPS's responsibility for that injury. In fact, the record shows that DCPS issued report cards on time, provided detailed teacher notes, recommended retention twice, then

10

after evaluation and identification, held IEP meetings regularly that appeared to be attended by multiple staff. As far as Ms. Anthony knew, the school was doing all that it could for her son—how could she have known differently? Rather, it is the totality of DCPS's inaction beginning in September 1997 (the start of D████████ third grade year) continuing through September 19, 2001 (the date D██████ was finally identified as a student requiring special education services) on through to the present (DCPS continues to deny D███████ FAPE by not giving him the special education services that he needs) that constitutes an on-going denial of FAPE, thus satisfying the continuing violation doctrine and making Ms. Anthony's claim a timely one.

Moreover, the Equitable Tolling Doctrine is also applicable here, further supporting the parent's argument that her entire compensatory education claim is timely. The Equitable Tolling Doctrine applies when a party receives inadequate notice, when a party acts in good faith, when a party is not fully apprised of her rights, or when a party is not represented by counsel. *Hammond* at *19; See also *Herbert v. Manchester, Sch. Dist.*, 833 F. Supp. 80, 84 (D.N.H. 1993). There is no evidence in the administrative record showing that DCPS advised Ms. Anthony of her rights under IDEA. Ms. Anthony did not have counsel in reference to D██████ educational needs in SY 96-97 through 2003. It was only through advice of undersigned counsel in the present case that Ms. Anthony was made aware of the Child Find requirements and her rights under IDEA. Therefore, the Equitable Tolling Doctrine applies and renders the denial of FAPE claim prior to March 25, 2002 timely.

11

THE EIGHT YEARS OF DENIAL OF FAPE REQUIRES D███████ RECEIVE 7200 HOURS OF COMPENSATORY EDUCATION SERVICES.

It is clearly established that the court or a hearing officer, in fashioning "appropriate" relief, may order compensatory education. *School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts*, 471 U.S. 359, 105 S. Ct. 1996 (1985). The U.S. Court of Appeals, District of Columbia has recently announced its adoption of a "qualitative standard" in determining what compensatory education award is appropriate relief. *Reid ex rel. Reid v. District of Columbia*, 2005 U.S. App. LEXIS 4934. In *Reid*, the court instructed that "compensatory education awards should aim to place disabled students in the same position they would have occupied but for the school district's violation of IDEA." *Id.* at *2. Furthermore, the court guides decision-makers with the following: "Just as IEPs focus on disabled students' individualized needs, so must awards compensating past violations rely on individualized assessments." *Id.* at *21. In setting forth a qualitative standard, *Reid* rejected the compensatory education awarded by the hearing officer and also the hour per hour compensatory education requested by the parent. Important in the court's reasoning is the notion that its qualitative approach is flexible and will produce different results in different cases, depending of course on the individual child's needs, focusing on compensatory education as an equitable remedy. *Id.* at *19-*23. What is necessary is that the compensatory education award "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Id.* at *22. The *Reid* court's reasoning does not bar an hour for hour compensatory education award; in fact, the court specifically acknowledges that sometimes the proper compensatory education award will

12

actually be more than one for one. *Id.* at *21. What is necessary is that the compensatory education award should be aimed to place disabled children in the same position they would have occupied but for the school district's violation of IDEA—whereas ordinary IEPs need only provide "some benefit," compensatory education awards must do more— they must *compensate.*" *Id.* at *24.

Under *Reid*, therefore, the party seeking compensatory education must establish: 1) the amount of loss (time); 2) what the student lost by not receiving the FAPE to which he/she is entitled (deficits); and 3) what it will take to make up for the deficits in the student's education.

### Eight Years of Denial of FAPE

In the present case, the administrative record establishes that D██████ was denied FAPE for eight years. See *supra* p. 2-9. For the first four years of that time period, D██████ was not receiving any special education services at all. See *supra* p. 2-6. The injury to D██████ is tremendous—he lost years of learning during a critical phase in his childhood and this time lost cannot be recaptured. See *Blackman v. District of Columbia*, 185 F.R.D. 4, 7 (D.D.C. 1999).[5] Even once D██████ was identified on September 19, 2001, DCPS continued to deny FAPE to D██████ by not providing him with the specialized instruction and related services he required in order to benefit from the instruction he received. See *supra* p. 6-9. The profundity of DCPS's malfeasance makes the case against the District even stronger, as courts "have recognized that in setting an

---

[5] "Any agency whose appointed mission is to provide for the education and welfare of children fails that mission when it loses sight of the fact that, to a young, growing person, time is critical. While a month in the life of an adult may be insignificant, at the rate at which a child develops and changes, especially one at the onset of biological adolescence with or without special needs like those of our plaintiff, a few months can make a world of difference in the life of that child." quoting *Foster v. District of Columbia Board of Education*, No. 82-0095 (D.D.C. February 22, 1982).

13

award, equity may sometimes require consideration of the parties' conduct..." *Reid* at *21 quoting *M.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 397. Here, DCPS knew of D████ grave mental health needs and learning problems, but did nothing about it. DCPS's own recommendations back in 2001 were for a therapeutic structured environment, yet DCPS *never* provided that to D████. DA-3, Testimony of Dr. Iseman.

<u>The deficits resulting from the 8 year denial of FAPE</u>

In order to make up for the eight years D████ has been deprived of an appropriate education, D████ requires intensive additional services to address his social/emotional and academic deficits, deficits which have been compounded by years of FAPE denial. Testimony of Dr. Iseman. D████ is testing in the borderline range cognitively, yet the scores obtained on academic testing were higher than expected based on his IQ scores. DA- 1, 3; Testimony of Dr. Iseman. D████ tests so poorly because of his untreated emotional needs, needs which are part and parcel of a significant psychosis. Testimony of Dr. Iseman. With D████ impaired social/emotional functioning which was not addressed in the school setting at all until SY 2002-2003, and even then insufficiently, D████ is simply not available for learning. Testimony of Dr. Iseman. The deficiencies in D████ education over the past eight years have resulted in a "loss across the board" for D████. Testimony of Dr. Iseman. D████ received no proper academic or social support for the past eight years. Testimony of Dr. Iseman. D████ suffered a great deal and may have permanently lost the ability to have appropriate interactions with adults and peers. Testimony of Dr. Iseman. D████ has not made academic gains in years, and is in fact once again failing his classes. Testimony of Dr. Iseman. D████ is still testing at the 2nd to 5th grade level academically, the same level at

14

which he tested years ago. DA-8, 12.  D██████ is "like a firecracker, waiting to explode"
and requires additional services on top of receiving an appropriate education at High
Road, a full-time therapeutic special education program, in order to make up for the
deficits in his education over the past eight years.  Testimony of Dr. Iseman; DA-1.

### What It Will Take to Make Up for the Deficits in D██████ Education

Dr. Iseman testified that D██████ requires an additional 7200 hours of services in
order to compensate for the deficiencies in his education for the past eight years.  The
number of hours of services was determined by Dr. Iseman looking at each school day
that D██████ was deprived of an appropriate education (1440 days of deficits), combined
with knowing what it is that D██████ should have been receiving in order to obtain FAPE
(he needed a full-time therapeutic special education program combined with the
provision of psychological counseling, speech and language therapy, the use of a BIP,
and the provision of ESY services), then looking at what D██████ deficits are now and
determining what it will take to address those deficits.  The mathematical calculation
utilized by Dr. Iseman was based on the number of hours per school day (6 hours minus
the lunch hour) multiplied by the number of days missed (180 days x 8 years = 1440
days), arriving at 7200 hours.  Dr. Iseman did not do a calculation that was unexplained
or unsupported by the evidence.  Dr. Iseman specifically testified, based on her expertise
in the field of special education, that D██████ requires 7200 hours of services to be
utilized over the course of the remainder of his educational career, just in the hopes that
he will be able to make up for what he lost.  The specific form of the compensatory
education may include, but is not necessarily limited to, individual and family therapy,
therapeutic summer programs to be implemented during the time periods in the summer

15

when D█████ is not in school, academic tutoring and possibly an extension of special

education eligibility so that D█████ may use the compensatory education hours awarded

to attend an appropriate program after age 22. Testimony of Dr. Iseman. Dr. Iseman

testified that the specific form of the compensatory education should be determined by

D█████'s MDT/IEP team on at least an annual basis, with the number of hours utilized

being specifically and carefully tracked. As long as the hearing officer awards the

appropriate number of hours and specifies what the award may include, there is no

danger of the hearing officer delegating his authority to a group that includes an

individual specifically barred from performing the hearing officer's functions. *Reid* at

*29. IEP teams may not reduce or discontinue compensatory education awards, but *Reid*

does not preclude the IEP team from formulating the specific manner in which the

compensatory education hours will take place, according to the student's individualized

needs as determined on an on-going basis.

In sum, expert testimony combined with the rest of the administrative record in

this case carefully establishes: 1) that D█████ was deprived of FAPE for eight years; 2)

what D█████ lost as a result of the deficiencies in his education for the past eight years

and finally, 3) what D█████ requires in order to correct those deficits. As such, the

parent's request for a remedy of 7200 hours of compensatory education services is

supported by the record and the law.

Based on the foregoing arguments, the arguments presented at the hearing, and on

the entire administrative record, DCPS has not satisfied its burden in regard to any of the

parent's claims. The appropriate and just remedy for DCPS' failure to provide D█████

with a FAPE for the past eight years, in addition to the order for DCPS to place and fund

Dolonta at the High Road Upper School, is an award to the parent of compensatory education for 7200 hours of special education and therapeutic services, the specific form of which is to be determined on at least an annual basis by the MDT/IEP team, and may include but is not limited to individual and/or family therapy, therapeutic summer programs, academic tutoring and extension of special education eligibility and services beyond age 22.

Respectfully Submitted,

Tracy L. Goodman
The Children's Law Center
Attorney for Corine Anthony, parent of Delonta Anthony

cc:    Stephanie Ramjohn Moore, Office of the General Counsel, DCPS
       (transmitted by fax to 202-442-5098/5097)

17

# THE CHILDREN'S LAW CENTER, INC.
# THE HEALTH ACCESS PROJECT AT CNMC

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Stephanie Ramjohn Moore | FROM: Tracy Goodman |
| COMPANY: DCPS Office of the General Counsel | DATE: 5/9/2005 |
| FAX NUMBER: (202) 442-5098/5097 | TOTAL NO. OF PAGES INCLUDING COVER: 18 |
| PHONE NUMBER: | |

RE:
D█████ A██████, DOB ████/89

**X URGENT**    **X FOR REVIEW**    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

.

THE CHILDREN'S LAW CENTER
901 15TH STREET NW, 5TH FLOOR
WASHINGTON, DC 20005
(202) 884-3141 (PHONE)
(202) 467-4949 (FACSIMILE)

10003

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## ENFORCEMENT AND INVESTIGATION DIVISION

### SPECIAL EDUCATION DUE PROCESS HEARING

### CONFIDENTIAL

### HEARING OFFICER'S DETERMINATION

**STUDENT:** D██████ A███████        **DATE OF BIRTH:** ███789

**ADDRESS:** ████████████N.W.
**Washington, D.C. 20001**

**PRESENT SCHOOL ATTENDING:** Francis J.H.S.
**HOME SCHOOL:** Francis J.H.S.

**DATE OF HEARING:** May 2, 2005

**TESTIFIED AT THE HEARING:**

| | |
|---|---|
| Dr. Sheila Iseman | Educational Consultant |
| David Emenheiser* | Director, High Road Upper School |
| (* Testified by telephone) | |

Student's Representative: Tracy Goodman, Esq.
The Children's Law Center
Address: 901 15th Street, N.W.
Washington, D.C. 20005
FAX: 202-467-0053

School System's Representative: Stephanie Ramjohn-Moore, Esq.
Address: 825 N. Capitol Street, N.E., Washington, D.C. 20002

2005 MAY -4 PM 1:20
DC PUBLIC SCHOOL SYSTEM

**INTRODUCTION:**

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on May 2, 2005, at the request of Tracy Goodman, counsel for the parent and the student. Stephanie Ramjohn Moore represented DCPS, the other party to this hearing.

**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq.; and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300; and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

**ISSUES:**

1. Did DCPS deny a Free Appropriate Public Education (FAPE) to the student by failing to provide an appropriate placement?

2. Is the High Road Upper School of Washington an appropriate placement?

3. Is the student entitled to compensatory education?

**DOCUMENTS SUBMITTED BY DCPS:**

**None**

**DOCUMENTS SUBMITTED BY STUDENT:**

**DA-1-DA-40**

**FINDINGS OF FACT:**

1. The student is fourteen-year-old male student who has been found eligible for special education services by DCPS as a student currently classified as a student with an emotional disturbance. (DA-12)

2. The student's current IEP calls for 15 hours of specialized instruction, one hour of counseling and one hour of speech and language therapy a week. The IEP does not contain current levels of educational performance levels in areas affected by the disability. The evaluation data is more than three years old and the student has not been provided triennial evaluations by

DCPS to determine current levels. (DA-12) The current IEP is inappropriate for not being based on current levels of educational performance. The current IEP is also inappropriate because it has no social/emotional goals for the student who has been classified as a student with an emotional disturbance.

3.    The student's report card from his current placement at Francis J.H.S. shows that the student is only receiving ten hours of specialized instruction a week. (DA-27) DCPS has made no showing that the student is receiving the related services in his current IEP.

4.    The student's 8th grade report card at his current placement of Francis J.H.S. showed that last school year he received final grades of an F in Math Fundamentals, a C- in his special education English class and a D- in his special education math class and the rest of his regular classes he received Ds. (DA-27) The student has not made educational progress at Francis J.H.S. Francis J.H.S. is an inappropriate placement.

5.    An independent psychological evaluation was conducted on the student by Howard University Hospital on April 9th 2004. The evaluator recommended that: "D̶e̶l̶e̶t̶e̶ should be placed in a full-time special education school for children/adolescents diagnosed with serious psychiatric disorders. Such a placement is essential for him to achieve in a therapeutic learning environment and to receive therapeutic help with his major social problems and distorted thinking." (DA-1)

6.    Dr. Sheila Iseman, the special education expert who testified for the student, agreed with the above recommendation that the student needs a full-time therapeutic special education program for adolescents diagnosed with serious psychiatric disorders. Dr. Iseman also concluded in her professional opinion, after observing Francis J.H.S. and talking to his teachers, that Francis is an inappropriate placement. Dr. Iseman also learned that the student was not receiving the related services required in his IEP. (Testimony of Dr. Iseman)

7.    The student has been accepted at the private special education day program of The High Road Upper School of Washington. (DA-38) High Road Upper School has a total of 41 students ages 13-21. High Road has a program for ED students. The student would be the 10th student in a special education class taught by a certified special education teacher and a full-time teaching assistant. He would have pull-outs for speech and counseling services. There are licensed social workers on staff and a licensed speech therapist comes to the school as needed. All staff are trained in crisis intervention. The students have behavior intervention plans based on a point and level system. There are other students with a similar profile to this student with psychiatric diagnosis. The High Road

3

Upper School also offers extended school year. (Testimony of Mr. Emenheiser)  The High Road Upper School of Washington is an appropriate placement for the student that offers a program that is reasonably calculated to provide educational benefits in a full-time special education therapeutic setting.

## DISCUSSION AND CONCLUSIONS OF LAW:

Counsel for DCPS has not met DCPS's burden of proof that the student has been provided a FAPE at his current DCPS placement.  Counsel for DCPS has presented no witnesses or documents to meet her burden of proof.  Counsel for the parent moved for a directed verdict and the motion was **GRANTED**.  Moreover, counsel for the parent's documents and their expert witness, Dr. Iseman, have shown that the current DCPS IEP and placement are inappropriate and the student has been denied a FAPE. (See Findings of Fact # 2-#6)

This hearing officer has also found that The High Road Upper School of Washington is an appropriate placement that offers an educational program that is reasonably calculated to provide educational benefits to the student. (See Findings of Fact #7)  The legal requirements for funding the student at The High Road Upper School of Washington have been met pursuant to the Supreme Court decisions in *Burlington School Committee v. Mass. Dept. of Education, 471 U.S. 359 (1985) and Florence County School District Four v. Carter, 510 U.S. 7 (1993).*

It is hereby **ORDERED** that:

1.    **DCPS shall place and fund the student including transportation costs at The High Road Upper School of Washington from his date of enrollment until DCPS provides an appropriate placement.  The student has "stay put" protections at The High Road Upper School of Washington.**

2.    **The parent is the prevailing party in this action**

**It is further ORDERED that counsel for the parties shall submit legal memoranda by the close of business of Monday May 9th on the issue of compensatory education, specifically whether the D.C. three year statute of limitations applies and what is appropriate compensatory education under the recent *Reid v. District of Columbia* decision by the D.C. Federal Circuit Court of Appeals at 2005 WL 678385.**

This is the final administrative decision in this matter on the placement issue raised in the due process hearing request.  Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

Seymour DuBow, Esq.
Impartial Hearing Officer                    Date filed: May 4, 2005

Date Issued:

5-4-05

HR 2
StarT: 1:15

## ATTENDANCE SHEET

| | | |
|---|---|---|
| **STUDENT'S NAME:** | ~~Anthony~~ | |
| **HEARING DATE:** | May 2, 2005 | |

| PRINTED NAME | ON BEHALF OF DCPS OR STUDENT | TITLE |
|---|---|---|
| Stephanie Ramjohn Moore | DCPS | attorney advisor |
| Tracy Goodman | Student | attorney, Children's law center |
| Laura Rinaldi | Student | attorney |
| Corine Anthony | student | parent |
| Clare Fray | (signature) | investigator, Children's Law Ctr |
| Sheila Iseman | Parent | Educ. Consult. |

Impartial Hearing Officer

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
ENFORCEMENT AND INVESTIGATION DIVISION

SPECIAL EDUCATION DUE PROCESS HEARING

CONFIDENTIAL

<u>INTERIM ORDER</u>

STUDENT: D█████ A████████        DATE OF BIRTH: ████789

ADDRESS: ██████████, N.W.
Washington, D.C. 20001

PRESENT SCHOOL ATTENDING: Francis J.H.S.
HOME SCHOOL:  Francis J.H.S.

DATE OF HEARING: May 2, 2005
LEGAL MEMORANDA FILED: May 9, 2005

TESTIFIED AT THE HEARING:

Dr. Sheila Iseman          Educational Consultant
David Emenheiser*          Director, High Road Upper School
(* Testified by telephone)


Student's Representative: Tracy Goodman, Esq.
The Children's Law Center
Address: 901 15th Street, N.W.
Washington, D.C. 20005
FAX: 202-467-0053

School System's Representative: Stephanie Ramjohn-Moore, Esq.
Address: 825 N. Capitol Street, N.E., Washington, D.C. 20002

40

**INTRODUCTION:**

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on May 2, 2005, at the request of Tracy Goodman, counsel for the parent and the student. Stephanie Ramjohn Moore represented DCPS, the other party to this hearing. An HOD was issued on May 4th 2005 ordering DCPS to place and fund the student at The High Road Upper School of Washington. This hearing officer requested both counsels for the parties to submit legal memoranda by May 9th 2005, on the issue of compensatory education and in particular what is appropriate compensatory education under the recent *Reid v. District of Columbia* decision by the U.S.D.C. Circuit Court of Appeals at 2005 WL 678385 and whether the D.C. three year statute of limitations applies. Both counsels submitted legal memoranda on time.

**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq.; and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300; and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

**ISSUES:**

1.    Did DCPS deny a Free Appropriate Public Education (FAPE) to the student by failing to provide an appropriate placement?

2.    Is the High Road Upper School of Washington an appropriate placement?

3.    Is the student entitled to compensatory education?

**DOCUMENTS SUBMITTED BY DCPS:**

**None**

**DOCUMENTS SUBMITTED BY STUDENT:**

**DA-1-DA-40**

## DISCUSSION AND INTERIM ORDER:

As noted in the introduction, both counsels submitted legal memoranda on how to calculate compensatory education in light of the recent *Reid* federal appellate decision. In *Reid*, the D.C. U.S. Court of Appeals rejected an hour for hour formula as a "cookie-cutter approach" that "runs counter to both the 'broad discretion' afforded by IDEA's remedial provision and the substantive FAPE standard that provision is meant to enforce." Instead, the Court adopted a fact specific flexible approach. "We think it would be highly incongruous if this qualitative focus on individual needs gave way to mechanical hour-counting when past rather than current violations of the FAPE standard were at issue. Accordingly, just as IEPs focus on disabled students' individual needs, so must awards compensating past violations rely on individualized assessments." This hearing officer does not have in the record a sufficient current assessment of the student's individual needs to make the fact specific determination of compensatory education required by *Reid*. This hearing officer ordered the student to be placed at The High Road Upper School of Washington in the May 4th HOD. After a reasonable amount of time at this placement, the staff at The High Road Upper School of Washington should be able to provide current fact specific information on the individual needs of the student and his current educational status.

It is hereby **ORDERED** that:

**The case shall be continued for 90 calendar days to develop the above current fact specific information. Counsels for the parties shall participate by telephone in a status conference at 12 noon on Monday May 23rd 2005 to schedule a mutually agreeable time for a hearing on compensatory education in accordance with the above discussion.**

Seymour DuBow, Esq.
Impartial Hearing Officer                    Date filed: May 19, 2005

Date Issued:

3                                                                          42

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**ENFORCEMENT AND INVESTIGATION DIVISION**

**SPECIAL EDUCATION DUE PROCESS HEARING**

**CONFIDENTIAL**

**HEARING OFFICER'S DETERMINATION**

**STUDENT:** D███ A█████          **DATE OF BIRTH:** ███/89

**ADDRESS:** ████████████.
**Washington, D.C. 20001**

**PRESENT SCHOOL ATTENDING:** Francis J.H.S.
**HOME SCHOOL:** Francis J.H.S.

**DATE OF FIRST HEARING:** May 2, 2005
**LEGAL MEMORANDA FILED:** May 9, 2005
**DATE OF HEARING ON COMPENSATORY EDUCATION:** October 26th 2005
**TESTIFIED AT THE HEARING:**

| | |
|---|---|
| **Dr. Sheila Iseman** | **Educational Consultant** |
| **David Emenheiser★** | **Director, High Road Upper School** |
| **Jennifer Murphy** | **Clinical Director, Positive Nature, Inc.** |
| **(★ Testified by telephone)** | |

**Student's Representative:** Tracy Goodman, Esq.
**The Children's Law Center**
**Address:** 901 15th Street, N.W.
**Washington, D.C. 20005**
**FAX:** 202-467-0053

**School System's Representative:** Stephanie Ramjohn-Moore, Esq. (Did not attend
Oct. 26th hearing on compensatory education)
**Address:** 825 N. Capitol Street, N.E., Washington, D.C. 20002

**INTRODUCTION:**

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on May 2, 2005, at the request of Tracy Goodman, counsel for the parent and the student. Stephanie Ramjohn Moore represented DCPS, the other party to this hearing. An HOD was issued on May 4th 2005 ordering DCPS to place and fund the student at The High Road Upper School of Washington. This hearing officer requested both counsels for the parties to submit legal memoranda by May 9th 2005, on the issue of compensatory education and in particular what is appropriate compensatory education under the recent *Reid v. District of Columbia* decision by the U.S.D.C. Circuit Court of Appeals at 2005 WL 678385, 2005 U.S. App.LEXIS 4934, and whether the D.C. three year statute of limitations applies. Both counsels submitted legal memoranda on time. The May 19th 2005 Interim Order continued the case for at least ninety days at his new placement at High Road Upper School to develop current fact specific information on his current educational levels and current individualized assessments for determining compensatory education pursuant to *Reid.* A hearing was held on October 26th 2005 to gather the above evidence as well as testimony on how to deliver compensatory education if awarded. The Student Hearing Office had provided written notice to counsel for both parties on the scheduled hearing. After waiting for over a half hour after the scheduled hearing time without counsel for DCPS appearing, this hearing officer commenced the hearing on the compensatory education issue.

**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq.; and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446) and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

**ISSUE:**

1.    Is the student entitled to compensatory education?

**DOCUMENTS SUBMITTED BY DCPS:**

**None**

**DOCUMENTS SUBMITTED BY STUDENT FOR OCTOBER 26TH HEARING:**

**DA-41-DA-47**

2

**FINDINGS OF FACT:**

1.    The High Road Upper School of Washington prepared a document done after the October 6th 2005 IEP meeting stating the student's current levels of academic performance. The document stated: "Grade Equivalent Approximations: Math Calculations 5.3; Broad Reading 6.6; Reading Comprehension 5.0" (DA-43) The last previous academic performance testing of the student was the psychological testing report of Howard University Hospital on April 9th 2004. At that time, the student tested at 5.2 grade level for Broad Reading, 3.5 grade level for Mathematics Reasoning and 2.9 grade level for Reading Comprehension. (DA-1)

2.    The High Road Upper School did not formally test the student on his current levels of academic performance when he first enrolled last May 2005. High Road Upper School did a clinical summary of the student on June 16th 2005 that stated: "D█████ progress at HRUS since his enrollment in May has been fair. D████ has shown improvement in his math skills and reading skills…Overall, D█████ appears to be benefiting from the HRUS program. He does well in the small classroom setting and requires the one on one attention he is able to get in the classroom." (DA-41) The Director concurred that the student's progress continues to be fair. The Director testified that the student does not have self-organization skills and would benefit from tutoring. (Testimony of Mr. Emenheiser)

3.    The student's first quarter progress report this school year showed he received Ds in English, World History, and Biology and the teachers' commented that he missed assignments and needs to focus more. He received a C in math and a B in Foreign Language which was Sign Language. He was absent seven days with four unexcused and three excused.(DA-46)

4.    The Director HRUS testified that the student's current social/emotional functioning is guarded. The student is withdrawing from his peers, but interacts better with adults. The student shows several delays in interactions with his peers and is disconnected from them. He demonstrates poor social skills. He is improving somewhat on his social emotional level. He entered the school being on the red level which is the lowest level and he is now low average on the yellow level. Average is green, above average is blue and gold is the highest level. He has shown improvements in deescalating his behavior and there have been less removals from class. Last year he was more frequently out of class. (Testimony of Mr. Emenheiser) Dr. Iseman testified that she agrees with Mr. Emenheiser's comments on his social emotional status based on her observation on October 11th 2005, at HRUS.

3

5.  The student can attend the Positive Nature, Inc. program after school. Positive Nature offers tutoring in reading from graduate students from the University of Maryland's Reading Program. The students receive tutoring services on a daily basis in accordance with their IEP goals and objectives. Positive Nature has students from High Road School. Positive Nature also has staff including a consulting psychiatrist, counseling psychologists and a clinical social worker to provide support for students' social emotional needs. DCPS Transportation drops students off after school with their program and then Positive Nature has transportation to return the students to their homes. The hours of the after school program are from after three until they close at seven p.m. The program includes students ages 14 to 18 and they currently have 45 students in their program. (Testimony of Ms. Murphy, DA-47)

6.  The student's IEP for the 2004-2005 School Year has been found in the May 4th HOD to be inappropriate for not being based on current levels of educational performance and not having social emotional goals for the student who has been classified as a student with emotional disturbance. DCPS made no showing that it fully implemented the above November 18th 2004 IEP. The student's report card indicated he was only receiving ten hours a week of specialized instruction even though his IEP called for 15 hours a week and DCPS made no showing that the student received the related services required by his IEP. (HOD of May 4th 2005, Findings of Fact #3)The above HOD also found that the placement at Francis J.H.S. was inappropriate because the student did not make educational progress. (HOD of May 4th 2005, Findings of Fact #4). The HOD determined that the inappropriate IEP and inappropriate placement resulted in a denial of a Free Appropriate Public Education (FAPE). (HOD of May 4th 2005)

7.  The student's October 10th 2003 IEP for the 2003-2004 School Year cut his specialized instruction in half from 16.5 hours to 8.35 hours and reduced his counseling by thirty minutes a week from the previous IEP without any explanation or justification in the MDT Notes. (DA-11) The IEP also contained no speech and language goals and no reading goals. The social emotional goals were not measurable or appropriate. There was also no Behavior Intervention plan. The student also did not receive the speech and language therapy and psychological counseling related services required in the above IEP. (DA-33, Testimony of Dr. Iseman) The student also did not make educational progress as indicated in his 2003-2004 Report Card. (DA-27) The student received a left leg fracture in early September 2003 when he was pushed down the steps by another student at Shaw J.H.S. and because of the injury did not attend school until January 2004. DCPS granted his counsel's request for a transfer to another school and DCPS transferred him Francis J.H.S. (DA-31) DCPS offered no evidence that it provided any home instruction including specialized instruction pursuant to his IEP in the above period. The student was

4

denied a FAPE for the 2003-2004 School Year because both the IEP and placement were inappropriate.

8.    The student's Report Card of June 25th 2004 at Francis J.H.S. for the 2003-2004 School Year starting in the second advisory and ending in the fourth advisory showed the following absences: 23 in Algebra, 9 in American History, 10 in Reading Comprehension, 22 in Physical Science and 7 unexcused homeroom absences. (DA-27)  The student's Report Card of July 8th 2003 at Shaw J.H.S. for the 2002-2003 School Year showed the following absences: 32 in Math Resource, 6 in Reading Comprehension and 11.5 unexcused homeroom absences. (DA-26)

## DISCUSSION AND CONCLUSIONS OF LAW:

Counsel for the parent argues in her legal memorandum of May 9th and at the October 26th 2005 hearing that the student is entitled to eight years of compensatory education from 1997 until the student's placement at The High Road Upper School of Washington on May 10th 2005, pursuant to the HOD of May 4th 2005.  Counsel for DCPS argues in her legal memorandum of May 9th 2005 that DCPS did not fail to provide services to the student but that the "student missed services that were provided to him by his own volition."

Congress for the first time in the *Individuals with Disabilities Education Improvement Act of 2004, (IDEA 2004)* applies a two year Statute of Limitations to alleged violations, unless a state has an explicit time limitation for presenting a complaint under IDEA.  *Section 615 (b) (6) (B)* states:

An opportunity for any party to present a complaint –which sets forth an alleged violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this part, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph

Prior to IDEA 2004, federal district courts in the District of Columbia applied, in the absence of an explicit time limitation in D.C. statutory or regulatory law for complaints alleging violations of IDEA, the "catch all" D.C. three-year statute of limitations at D.C. Code Section 12-301 (8).  *See Wingfield v. District of Columbia, Civil Action No. 00-121, (June 21st 2000) and Hammond v. District of Columbia, 2001 U.S. District of Columbia, 2001 U.S. Dist Lexis 25846 (D.D.C. 2001).* (Judge Green in *Wingfield* applied the "catch all" three year Statute of Limitations and did not find that either the continuing violation doctrine or equitable tolling doctrine applied to the facts, but in *Hammond,* Judge Kessler found the continuing violation doctrine applied.)

47

The legislative history to *IDEA 2004* clearly shows that Congress intended to place a statute of limitations on compensatory education claims. The House Report stated as follows:

> The Act currently has no statute of limitations and leaves local educational agencies open to litigation for the entire length of time a child is in school, whether or not the child has been identified as a child with a disability. Local educational agencies are often surprised by claims from parents involving issues that occurred when an elementary school program when the child may currently be a high school student. Such an unreasonably long threat of litigation hanging over a local educational agency forces them to document every step they take with every child, even if the parents agree with the action, because they could later change their mind and sue. The fear of far-removed litigation raises the tension level between the school and the parent. Prolonged litigation breeds an attitude of distrust between the parents and the school personnel and has the effect of requiring school personnel to document conversations, rather than working cooperatively to find the best education placement and services for the child.

> The bill includes a statute of limitations of one year from the date of the violation. This change will align the Act with other Federal statutes that have explicit statutes of limitations (e.g., civil rights claims, Federal tort claims, Social Security) and allow for timely resolution of issues. Parents, or their advocates, often wait to bring actions until many years after discovering a concern. The child's education is usually jeopardized by this strategy. A statute of limitations alleviates unnecessary claims for compensatory education and allows local educational agencies to limit unnecessary paperwork designed to protect them from protracted long-term litigation. H. R. Rep. No. 108-77, Improving Education Results for Children with Disabilities Act of 2003, at 115-116. (April 29[th] 2003)

> The Senate Report stated:

> Section 615 (f) (3) (D) creates a new two year timeline for requesting a hearing on claims for reimbursed or ongoing compensatory education services. If the State has developed an explicit timeline for requesting a due process hearing either through statute or regulation, the State provision will apply. The bill also provides for exceptions to the timeline in limited instances. The committee does not intend that common law determinations of statutes of limitation override this specific directive or the specific State or regulatory timeline. S.1248, S. Rep.No. 108-185, Lexis Nexis (TM) Congressional Document at 26 of 270 (Nov. 3[rd], 2003)

This hearing officer concludes that IDEA 2004's two year statute of limitation applies to this case to bar claims before March 25, 2003, which is two years before the filing of this due process complaint.

While compensatory education is not a remedy expressly identified in IDEA, courts have awarded it in appropriate circumstances by exercising their authority under *20 U.S.C. Section 1415 (i) (2) (B) (iii) and IDEA 2004 at Section 615 (i) (2) (C) (iii)* to "grant such relief as the court determines appropriate." The Supreme Court in *Florence County School District Four v. Carter*, 510 U.S. 7 at 16 stated: "Under this provision, 'equitable considerations are relevant in fashioning relief,' *Burlington*, 471 U.S. at 374, 105 S.Ct., at 2005, and the court enjoys 'broad discretion' in so doing, id. at 369, 105 S. Ct. at 2002. Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required." In *Reid*, The D.C. Court of Appeals held: "Consistent with Congress's stated aim of 'ensur[ing] that the rights of children with disabilities and parents of such children are protected,' see 20 U.S.C. Section 1400 (d) (1) (B), we therefore join our sister circuits and hold that compensatory education awards fit comfortably within the 'broad discretion' of courts fashioning and enforcing IDEA remedies, see *Carter*, 510 U.S. at 15-16." *Id.* at 20

In determining the ultimate compensatory education award, the D.C. Court of Appeals in *Reid* stated: "In every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Id.* at 22 This hearing officer has determined that DCPS denied a FAPE to the student from March 25th 2003 until his placement at The High Road Upper School on May 10, 2005 pursuant to the HOD of May 4, 2005. (See Findings of Fact #6 & #7) Pursuant to the dictates of *Reid* to make a fact-specific inquiry on an award of compensatory education , this hearing officer took additional evidence on October 26th 2005 to determine the student's current academic and social performance since attending High Road Upper School and what compensatory education services would be necessary. The testimony of the Director of the HRUS and the documents submitted by the school indicate the student has shown improvement in his math and reading skills and his academic progress is fair. HRUS did not test the student for his levels of academic performance when he first entered HRUS on May 10th 2005. The previous academic performance testing of the student was the psychological testing report of Howard University Hospital on April 9th 2004. At that time, the student tested at 5.2 grade level for Broad Reading, 3.5 grade level for Mathematics Reasoning and 2.9 grade level for Reading Comprehension. (DA-1) The High Road Upper School of Washington prepared a document done after the October 6th 2005 IEP meeting stating the student's current levels of academic performance. The document stated: "Grade Equivalent Approximations: Math Calculations 5.3; Broad Reading 6.6; Reading Comprehension 5.0" (DA-43) Both Dr. Iseman and the Director of HRUS testified that reading comprehension was the major academic weakness for the student. From April 9th 2004 to the middle of October 2005, the student made over a two grade level improvement from 2.9 to 5.0 in Reading Comprehension; over a one grade improvement from 5.2 to 6.6 in Broad Reading; and from a 3.5 grade level in Mathematics Reasoning to a 5.3 grade level in Math Calculations. These improvements support HRUS conclusions that the student is making progress in math and reading at HRUS. With more individual tutoring as recommended by both Dr. Iseman and the

Director of HRUS, the student should be able to substantially improve and "make up for prior deficiencies". *Id.* at 19  The student has also shown some improvement in his social emotional status, but it is still "guarded".  The Director of HRUS testified the student started their school at the lowest behavioral level and has progressed at the current time to the next level.  While he is making some progress on his social emotional problems including improvements in deescalating his behavior and less removals from class, continued counseling is necessary. (See Findings of Fact #4)  At the present time, HRUS does not provide the after school tutoring and counseling the student needs.  This hearing officer concludes that Positive Nature, Inc. can provide the after school individual tutoring and counseling the student needs along with his education at HRUS to make up for prior deficiencies. (See Findings of Fact #5)  Based on the student's academic progress between the Howard University Report in April 2004 and the recent October report from HRUS, two school years of Positive Nature tutoring along with the HRUS program should provide the "educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Id.* at 22  The current evidence shows some progress in his social emotional status at HRUS, but there is still a need for further counseling to address his social emotional issues that were not properly addressed by DCPS.  While it is difficult to predict with precision in the social emotional area, two school years of additional counseling from Positive Nature along with the HRUS program could make up for prior deficiencies. (See Findings of Fact #6 & #7)

The Court in *Reid* also stated: "In addition, courts have recognized that in setting the award, equity may sometimes require consideration of the parties' conduct…" *Id.* at 22.  This hearing officer is troubled by the pattern of unexcused absences of the student as shown in Findings of Fact #8 and which is continuing over at HRUS where he had seven absences including four unexcused absences in the first quarter. (See Findings of Fact #3)  If the student continues to have unexcused absences, the award of compensatory education may be modified.

It is hereby **ORDERED** that:

**The student is awarded two school years of compensatory education in the form of after school tutoring and counseling to be provided by Positive Nature, Inc. and funded by DCPS.**

**High Road Upper School shall send a copy of the student's second quarter progress report including the student's attendance record through counsel for the parent to this hearing officer at the Student Hearing Office.**

8

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

Seymour DuBow, Esq.
Impartial Hearing Officer

Date filed: November 4, 2005

Date Issued:

9