UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D.A. ) | |
| ) | |
| ) | |
| Plaintiffs ) | |
| ) | Civ. Action No. 06-192 (ESH) |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, et al. ) | |
| Defendants. ) | |
| ) | |
| ) | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and this Court's Scheduling Order, plaintiffs by and through their attorney respectfully move for an Order granting summary judgment in their favor on the grounds that no genuine issue of material fact exists and that plaintiffs are entitled to summary judgment as a matter of law. Plaintiffs further request that the Court enter an Order granting 7200 hours of compensatory education to compensate plaintiffs for defendants' violation of the IDEA from SY 1996-1997 through May 10, 2005. Plaintiffs also request that the Court order attorneys' fees, expenses, and costs.

The grounds for this motion are set forth in the accompanying Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment. Also accompanying this motion, is Plaintiffs' Statement of Material Facts Not in Dispute and a Proposed Order Granting Summary Judgment and a proposed order.

Plaintiffs request oral argument.

Dated: August 16, 2006

By: _____ /s/ _____

    Ankur J. Goel, D.C. Bar #451594
    McDermott Will & Emery LLP
    600 13th Street, N.W.
    Suite 400
    Washington, D.C. 20005
    Tel.: (202) 756-8000
    Fax: (202) 756-8087

Attorney for Petitioner

WDC99 1270832-3.009975.0135

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D.A. | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) Civ. Action No. 06-192 (ESH) |
| | ) |
| DISTRICT OF COLUMBIA, et al. | ) |
| Defendants. | ) |
| | ) |
| | ) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This case arises under the Individuals With Disabilities Education Act ("IDEA"). The undisputed evidence in the record establishes that the District of Columbia Public Schools ("DCPS") failed to evaluate, identify, and provide a Free Appropriate Public Education to D.A. over the course of eight years.

The only remaining issue in the case is the award of compensatory education to remedy DCPS' past violations and to give the plaintiff – now 17 years old – an opportunity to succeed in life. The Hearing Officer erroneously limited the award of compensatory education to two years by applying a two year statute of limitations that DCPS did not raise and that did not apply to this case.

Plaintiffs respectfully request that the Court order compensatory education to remedy the entirety of DCPS' violations, as supported by the testimony of plaintiffs' expert witness below.

## BACKGROUND

This case arises under the Individuals With Disabilities Education Act ("IDEA"), which requires DCPS to identify, locate, and evaluate all children with disabilities residing in its jurisdiction, and provide those children with a Free Appropriate Public Education ("FAPE"). 20 U.S.C. § 1412(a)(3); 34 C.F.R. § 301.25; D.C. Mun. Regs. tit. 5, § 3002.1(d) (2003). *See also Department of Education, State of Hawaii v. Cari Rae*, 158 F. Supp. 2d 1190 (D. Haw. 2001); *Handberry v. Thompson*, 219 F. Supp. 2d 525, 540 (S.D.N.Y. 2002). At issue is the plaintiffs' request for compensatory education to remedy defendants' failure over the course of D.A.'s elementary and junior high school education to meet those obligations. *Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005).

*The student.* D.A. is a 17 year old boy who is diagnosed with chronic paranoid schizophrenia and who has, over the years, had auditory and visual hallucinations, engaged in "magical thinking," including at school, and functioned at a borderline intellectual level. Administrative Record[1] ("AR") 71-77.

According to evaluations in the record, D.A. was prenatally exposed to drugs and alcohol, and was abandoned and adopted at the age of three months. AR 84. D.A. has exhibited severe emotional and psychiatric problems, one result of which was that D.A. felt very insecure and was typically afraid to go to class at his DCPS junior high school. AR 321; 346. Unfortunately, rather than provide D.A. an appropriate education, DCPS allowed D.A. to languish for years in D.C. schools – unidentified as a student with a disability. *Id.* Indeed, although the IDEA places an affirmative obligation on school districts to identify and evaluate children to determine if they are disabled (known as the "Child Find" requirement), DCPS

---

[1] Citations to the Administrative Record are to the Administrative Record filed by Defendant on June 30, 2006, docket numbers 12-15.

WDC99 1271641-3.009975.0135

consistently failed to do so over a period of five years, even though D.A. repeated both the 3rd and 4th grades, as described below.  AR 305-310.

When DCPS finally did refer D.A. for evaluation, it failed to deal with his manifest emotional and psychiatric needs, classifying him simply as speech and language impaired, failed to provide him with appropriate services, and otherwise failed to provide an appropriate education.

*DC Fails to Identify and Evaluate D.A.*  DCPS failed to identify and evaluate D.A. over the course of five years beginning in 2nd grade, even though he showed little mastery of fundamental skills, displayed disruptive behaviors, and repeated both the 3rd and 4th grades. Plaintiffs' unrebutted expert witness testified that D.A.'s speech and language deficits would have been present during kindergarten, SY 1994-1995, and should have been identified at that point.  Testimony of Dr. Sheila Iseman, ("Iseman Test."), AR 348-349.  At the very latest, DCPS should have identified D.A. as a student with a disability by SY 1996-1997, based on his school performance.  Iseman Test., AR 305; 349-350.

- DCPS did not identify D.A. in 2nd grade (SY 1996-97).  In that year, D.A.'s SAT-9 student report showed he was below basic in all areas, meaning he has "little or no mastery of fundamental knowledge and skills" for his grade level.  SAT-9 Report, AR 153-155; Iseman Test., AR 305.

- DCPS did not identify D.A. in 3rd grade (SY 1997-98).  In that year, D.A. displayed disruptive behaviors, such as inappropriate socialization and lack of self-control, as well as a lack of focus when not under close supervision.  1997-98 Report Card, AR 160; Iseman Test., AR 306-307.  He also displayed below basic scores in all areas on his SAT-9s and was below the instructional level in reading and math in each of the

WDC99 1271641-3.009975.0135

advisories.  Stanford Achievement Test and 1997-98 Report Card, AR 156-161.  D.A. was retained to repeat 3rd grade the following year.  DCPS failed to evaluate or identify him.  Iseman Test., AR 306-307.

- DCPS did not identify D.A. in his 2nd attempt at 3rd grade (SY 1998-99).  In that year, D.A. showed no improvement, struggled academically and behaviorally, and was in danger of being retained again at the end of the year.  Iseman Test., AR 308.  He obtained below basic in writing, listening, speaking, and social studies and unsatisfactory marks for most of his work habits and personal/social skills.  1998-99 Report Card, AR 164-166.  He nonetheless proceeded to 4th grade.

- DCPS did not identify D.A. in 4th grade (SY 1999-2000).  In that year, D.A.'s teacher was "very concerned" about his classroom behavior, 1999-2000 Report Card, AR 169-171, and D.A. was unable to master even a "basic working knowledge of skills/concepts" and "seldom produce[d] work of satisfactory quality."  *Id.*  D.A. was retained for the second time, on this occasion to repeat 4th grade the following year.  DCPS again failed to evaluate or identify D.A. after retaining him.  Iseman Test., AR 309.

- Finally, halfway through his 2nd attempt at 4th grade at age 12, DCPS referred D.A. for evaluations in January 2001.  Iseman Test., AR 310.

*DCPS Fails to Provide an Appropriate Public Education.*  This long-delayed evaluation was alarming, yet DCPS continued to move at its glacial pace – and when it did move, failed to address the problem.  Psychological evaluations revealed D.A. was functioning at a borderline level intellectually and suffering psycho-social and emotional difficulties.  Psych. Eval. 1/17/01, AR 91.  A speech and language evaluation indicated D.A. had a severe language disorder.

-4-

Speech Eval. 7/11/01, AR 78-86; Iseman Test., 312-314. Nonetheless, DCPS did not propose an

Individualized Education Plan ("IEP") until the following school year, in September 2001.

Iseman Test., AR 322.

Although DCPS subsequently created IEPs as required by the IDEA, DCPS' efforts fell

well short of meeting D.A.'s needs, as the Hearing Officer found. Despite finally identifying

D.A. as suffering from emotional disturbance and language disorder, DCPS failed to provide an

adequate FAPE during each school year between September 2001 and May 2005.

- The initial IEP, dated September 19, 2001 (AR 93-105), included no counseling or
  social/emotional goals, or even an acknowledgment of D.A.'s significant difficulties
  with social/emotional functioning, despite DCPS' own evaluations recommending
  such. Iseman Test., AR 322-324. And despite burgeoning behavioral problems
  resulting from his emotional difficulties, the IEP did not contain a Behavioral
  Intervention Plan ("BIP") or provide Extended School Year ("ESY") services. *Id.*
  Other services were inadequate – with the IEP providing only five hours of special
  education in speech and language, when he needed special education services in
  reading, math, written expression, social/emotional, and speech and language. *Id.*

- The second IEP, dated May 15, 2002 (AR 106-117), was inadequate for similar
  reasons. It again recognized only D.A.'s speech and language impairment, ignoring
  his social/emotion needs. Iseman Test., AR 324-325. Remarkably, DCPS made no
  provision for counseling or therapeutic interventions, despite the earlier evaluations,
  and even though D.A had recently been hospitalized because of his psychiatric
  condition and diagnosed with chronic paranoid schizophrenia. Iseman Test., AR 324-
  325. Additionally, the IEP did not provide D.A. with the level of specialized

WDC99 1271641-3.009975.0135

instruction he required, providing only 10 hours when he needed more. *Id.* The IEP also did not contain a BIP or ESY. *Id.*

- The third IEP, dated October 2, 2002 (AR 120-127), was inadequate for many of the same reasons. D.A. yet again did not receive enough specialized instruction and the IEP again lacked a BIP and ESY. Iseman Test., AR 328-332. Although DCPS did finally recognize D.A.'s social and emotional problems, it did so by changing D.A.'s classification from speech language impairment to emotional disturbance. Iseman Test., AR 330-331. DCPS offered no justification for dropping D.A.'s speech language impairment classification, and should not have done so. *Id.*

- The Hearing Officer found the fourth IEP, dated October 3, 2003 (AR 128-139), inadequate because it inappropriately cut D.A.'s specialized instruction in half, reduced his counseling, lacked appropriate goals, and was inadequately implemented. Hearing Officer's Determination ("HOD") 11/4/05, AR 46-47. D.A.'s school placement was also inappropriate; D.A. did not make educational progress during this year. 2003-04 Report Card, AR 181; Iseman Test., 332-334.

- The Hearing Officer found the fifth IEP, dated November 18, 2004 (AR 140-149), inadequate because D.A.'s school placement was inappropriate; the IEP was not "based on current levels of educational performance;" the IEP did not contain the appropriate social emotional goals; and the IEP was inadequately implemented. HOD 11/4/05, AR 46. D.A.'s school placement at Francis J.H.S. was inappropriate because he did not make educational progress, due to a lack of services available and the school's inability to cope with D.A.'s fears and insecurities. D.A. felt very insecure and was typically afraid to go to class or lunch, and the principal at Francis allowed

-6-

him to spend most of the day with a security guard or in the principal's office, the only places where D.A. felt safe. HOD 5/4/05, AR 36. D.A.'s teachers at Francis recognized the school was not an appropriate placement for him. Iseman Test., AR 344-347.

*D.C. Administrative Hearing.* In March, 2005, D.A.'s mother filed a request for a hearing. Hearing Request, AR 2-7. D.A.'s mother argued on his behalf that DCPS denied D.A. a FAPE by: (1) failing to timely identify, locate, and evaluate D.A.; (2) failing to develop and/or implement appropriate IEPs for D.A.; (3) failing to provide an appropriate educational placements(s) for D.A. for eight years; (4) failing to provide D.A. with the necessary special education and related services he requires; (5) failing to develop and/or implement an appropriate Behavior Intervention Plan for D.A.; (6) failing to conduct timely and/or adequate re-evaluations of D.A.; and (7) failing to adequately consider, offer, and/or provide Extended School Year services to D.A. AR 16.

Although DC Regulations and applicable caselaw placed the burden of proof on DCPS to establish its compliance with IDEA, DCPS presented <u>no</u> evidence at the May 2, 2005 hearing. The Hearing Officer found D.A.'s current IEP and school placement inappropriate and a denial of a FAPE, HOD 5/4/05, AR 35-37, and ordered D.A. placed at the High Road Upper School. *Id.* The Hearing Officer ordered counsel for both parties to submit legal memoranda on the issue of compensatory education, and held another hearing in October 2005. *Id.*

DCPS did not attend the October 2005 compensatory education hearing and presented no evidence. After hearing from D.A.'s expert witness, the Hearing Officer awarded D.A. two years of compensatory education to remedy DCPS' failure to provide D.A. a FAPE from March 25, 2003 (two years before the hearing request was filed) until May 10, 2005, when he was

placed at High Road.  HOD 11/4/05, AR 47-50.  However, the Hearing Officer did not award

compensatory education for, and did not address, the violations prior to March 25, 2003, and

asserted that such claims were barred by the statute of limitations, even though DCPS had never

raised a statute of limitations defense.  *Id.*

Plaintiffs timely filed this appeal of the Hearing Officer's decision.  After plaintiffs

appealed to this court, the Hearing Officer issued an order that purported to reduce the

compensatory education award to 18 months, although DCPS did not ask for such a reduction.

HOD 3/22/06, AR 53-54.  The Hearing Officer did so without holding a hearing.  *Id.*

## ARGUMENT

In reviewing administrative decisions under the IDEA, the district court reviews the

records of the administrative proceedings, may hear additional evidence at the request of a

party, and makes a decision based on the preponderance of the evidence.[2]   A district court's

standard of review under the IDEA is less deferential than that applied under the substantial

evidence test used in ordinary administrative review cases.[3]

**I.    The Unrebutted Evidence Establishes that Defendants Violated IDEA Beginning in
       1996 – 1997, and that Plaintiff Should Be Awarded 7200 Hours of Compensatory
       Education**

Although DCPS had the burden of proof in the administrative hearing, D.C. Mun. Reg. §

3022.16,[4] it produced no evidence to establish that it had provided a Free Appropriate Public

Education.  DCPS' failure to put on any evidence is dispositive.  In addition, the unrebutted

---

[2] 20 U.S.C. § 1415(i)(2)(C); *Hester v. District of Columbia*, 433 F. Supp. 2d 71 (D.D.C. 2006)
[3] *See, e.g., Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988); *Kroot v. District of Columbia*, 800 F. Supp. 976, 981 (D.D.C. 1992).
[4] The DC Circuit has held that this municipal regulation continues to apply, even after the Supreme Court held in *Schaffer v. Weast*, 126 S. Ct. 528, 536 (U.S. 2005), that the burden would be placed on the party seeking relief in the absence of a state rule.  See *Schoenbach v. District of Columbia*, 2006 U.S. Dist. LEXIS 38667, 3 (D.C. Cir. June 12, 2006).

testimony from plaintiffs' witnesses solidifies the conclusion that DCPS violated the IDEA and failed to provide FAPE.

As described above, the unrebutted testimony from plaintiffs' expert witness established that DCPS failed to provide D.A. with a Free Appropriate Public Education for the period from 1996 until the filing of the hearing request in March 2005. From 1996 to 2001, DCPS failed to identify D.A. as a child with a disability and failed to perform any evaluations, even though DCPS could have and should have done so. As plaintiffs' expert testified, DCPS could have identified D.A. as early as kindergarten. Iseman Test., AR 348-349. However, by 2nd grade, DCPS certainly should have done so, AR 305; 349-350. DCPS' failure to evaluate D.A. after he repeated both the 3rd and 4th grades, when he was unable to perform basic skills in the classroom and was exhibiting emotional difficulties, is particularly problematic. Iseman Test., AR 305-310.

After finally evaluating D.A. in 2001, DCPS failed to develop an IEP that was appropriate for D.A., as plaintiffs' unrebutted expert witness testimony established. Iseman Test., AR 322-341. The IEPs that were developed failed to address his key emotional and psychological needs, lacked behavioral intervention plans, provided insufficient special education services given his needs, and were not fully implemented. *Id.*

The Hearing Officer rightly concluded that DCPS had violated IDEA and failed to provide FAPE, although as discussed below the Hearing Officer incorrectly limited his discussion to a 2 year period prior to the filing of the hearing request in March 2005. HOD 11/4/05, AR 45-50.

Plaintiffs' unrebutted expert witness testimony also established that DCPS' failures had a substantial impact on D.A.'s educational progress, and that he required 7200 hours of

-9-

compensatory education – to take a variety of forms over a period of time – to compensate for DCPS' failures. AR 350-354. Dr. Sheila Iseman, an expert in childhood education who has firsthand knowledge of D.A. and of his past and current school placements, testified at both due process hearings, AR 288; 442, and explained both her reasoning and her calculations in support of an award of 7200 hours of compensatory education. AR 350-354.

According to Dr. Iseman, compensating D.A. for DCPS' failure would "take a lot of intervention, probably more than he would have needed had he received [] [adequate support] on time." AR 449. D.A.'s social/emotional problems have complicated his educational experience and have negatively impacted his academic performance. AR 328; 447-448. As a result, D.A. has suffered a great loss "in terms of social/emotional stability… [and] in terms of acquisition of academic skills." AR 448. He has, in fact, regressed academically due to DCPS' failure to recognize and accommodate his mental disability. AR 351.

D.A. *can* be compensated, however. Dr. Iseman indicated that "with intensive efforts," D.A. may be able to make up for lost time. AR 449. The High Road Upper School, where D.A. is currently placed, provides appropriate individual and group therapy, AR 352, "but he needs more assistance than that in terms of a compensatory-education package." AR 450.

D.A. will require additional individual tutoring, additional individual counseling, and extended summer education. AR 353. He should attend an after school program in order to benefit from life skills training, and from vocational exposure, until he is 21 years of age. AR 351; 451-452; 454. In order to help D.A. "be a productive member of the community when school is over," he also needs "extended eligibility [for compensatory education] past the age of 21" to work with a job coach. AR 452-454.

Dr. Iseman recommended 7200 hours of compensatory education for D.A. AR 352. Dr. Iseman arrived at that figure by calculating the number of educational hours lost over a period of eight years, AR 351-352, but this is no "cookie-cutter" assessment. Recognizing D.A.'s need for "intensive services" which can only be provided through compensatory education, AR 449, Dr. Iseman emphasized the importance of flexibility in his future education. AR 353-354. "[H]e may need fewer services when he's doing well and many more intensive services when he's doing not as well." AR 353. Because such an award will help D.A. make up for lost educational opportunity, "[h]aving the flexibility of those [7200] compensatory education hours" is appropriate. AR 353-354.

The Hearing Officer ignored Dr. Iseman's unrebutted testimony, and awarded D.A. "two years of compensatory education in the form of after school tutoring and counseling[.]" AR 50. The Hearing Officer speculated – with no supporting evidence – that "[w]hile it is difficult to predict with precision in the social emotional area, two years of additional counseling . . . along with the [High Road Upper School] program *could* make up for prior deficiencies." AR 50 (emphasis added). The Hearing Officer failed to engage in "an informed and reasonable exercise of discretion regarding what services [D.A.] needs to elevate him to the position he would have occupied absent the school district's failures." *Reid*, 401 F.3d at 527.

Because DCPS violated IDEA for a period extending back to 1996, and in light of Dr. Iseman's testimony about the need for and appropriateness of compensatory education, this Court should order DCPS to provide 7200 hours of compensatory education.

## II.    The Hearing Officer Erred In Applying a Statute of Limitations

Although DCPS did not raise a statute of limitations defense, the Hearing Officer, on his own initiative, limited his decision based on an asserted two year limitations period. HOD

-11-

11/4/05, AR 47-48. The Hearing Officer should not have injected the statute of limitations issue

when defendants did not raise it. Moreover, the Hearing Officer incorrectly applied the wrong

statute of limitations.

### A.     The Statute of Limitations is an Affirmative Defense that DC has Waived

It is well-established that the statute of limitations is an affirmative defense that is

waived if not raised in the answer. Fed. R. Civ. P. 8(c); *Harris v. Secretary, Department of*

*Veterans Affairs,* 126 F.3d 339, 343 (D.C. Cir. 1997); *Kroot v. District of Columbia*, 800 F.

Supp. 976 (D.D.C. 1992) (in a case arising under IDEA, defendants waived the statute of

limitations defense by failing to raise it in the answer).

Here, DC waived any affirmative statute of limitations defense in the administrative

hearings below, and the Hearing Officer should not have limited the case on the basis of an

unasserted affirmative defense. In response to plaintiffs' hearing request, DC never advised

plaintiffs that it was asserting a statute of limitations defense. At the original hearing in May

2005, AR 243, D.C. presented argument but no evidence, and never mentioned a statute of

limitations defense. At the very end of the hearing – after evidence had been presented – the

Hearing Officer invited the parties to submit memoranda on whether a three year statute of

limitations applied, as well as the appropriate compensatory education award. AR 370-371.

DCPS declined the Hearing Officer's invitation to raise a statute of limitations defense at

that time. Though it filed a response on May 9, 2005, it asserted only that the requested award

was inappropriate under the circumstances and applicable legal standards governing

compensatory awards. Memo from D.C. to Hearing Officer 5/9/05, AR 13-15.

Subsequently, on October 26, 2005, an additional hearing was held on the compensatory

education request. AR 373. DCPS did not appear at the hearing, and thus did not and could not

have raised a statute of limitations defense, whether by argument or otherwise. AR 376. Testimony at the hearing focused on the need for and appropriateness of the compensatory education request. The Hearing Officer's subsequent decision unilaterally applied a statute of limitations even though DC had never raised it. This was improper, and the Court should reject that aspect of the Hearing Officer's decision.

In addition, DCPS has not asserted a statute of limitations defense in its answer to the complaint in this litigation. Accordingly, there is no statute of limitations defense that is properly before the Court, and the Court should order compensatory education for the full period, and in the amount supported by the unrebutted expert witness testimony.

**B.    The Statute of Limitations the Hearing Officer Applied Was Not Even In Effect, and the Hearing Officer Failed to Consider When the Claims Accrued**

Although no statute of limitations defense is before the Court, it is worth noting that the Hearing Officer asserted that he was applying the statute of limitations added to the IDEA as part of the IDEA Improvement Act of 2004. AR 47-50. However, that amendment did not apply to this action, because the Act was effective July 1, 2005. Sec. 302, Pub. L. 108-446, 118 Stat. 264, codified at 20 U.S.C. § 1400 note. The Hearing Request in this matter was filed March 25, 2005, before the amendment's effective date (AR 2-7); the hearing on the merits took place May 2, 2005 (AR 243-371), before the amendment's effective date; and the Hearing Officer invited the parties to brief the statute of limitations issue on May 4, 2005 (AR 370-371), before the amendment's effective date. Each of these events – as well as the conduct at issue – took place prior to the amendment's effective date of July 1, 2005.

Nothing in the IDEA Improvement Act suggests that Congress intended it to apply retroactively to cases filed prior to the effective date of the Act. Absent such an indication of Congressional intent, the Act does not apply retroactively. At least one other court has

-13-

concluded that the IDEA's new statute of limitations does not apply to cases filed before the effective date. *See, e.g., R.G. v. Glen Ridge Bd. of Educ.*, 2005 U.S. Dist. LEXIS 30606, *12 (D.N.J. Dec. 2, 2005). *See also Landsgraf v. USI Film Prods.*, 511 U.S. 244, 264, 280 (1994) (newly enacted federal statutes are generally not applied retroactively absent explicit Congressional authorization). For these reasons, the two year statute of limitations does not apply to this case.

Moreover, the Hearing Officer applied the new statute of limitations incorrectly. For example, the Hearing Officer mechanically limited his consideration to two years preceding the date of the hearing request – without considering or establishing when the claims at issue accrued. AR 47-50. This is no small matter, since under the IDEA amendments, a claim accrues when the parent "knew or should have known" about the alleged action that forms the basis of the complaint; and no statute of limitations applies at all if the school district fails to provide the parent any of the required information set forth in the statute.[5] Neither DCPS nor the Hearing Officer ever addressed these or any other aspects of the new statute of limitations.

### III.    The Hearing Officer's Order Purporting to Reduce the Compensatory Education Award From Two Years to 18 Months Violated Due Process and Was Not Supported By the Evidence

The Hearing Officer subsequently compounded the initial error by purporting to issue an order reducing the compensatory education award to 18 months, AR 53-54, even though the November 2005 order was already on appeal and even though DCPS did not ask for the reduction. The Court should, at a minimum, rule that the purported reduction was unauthorized under the IDEA.

---

[5] The new (and inapplicable) statute of limitations provides: "[a] parent . . . shall request an impartial due process hearing within 2 years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint." However, this timeline does not apply based on "the local educational agency's withholding of information from the parent that was required under this part to be provided to the parent." 20 U.S.C. § 1415(f)(3)(C) and (D).

-14-

The Hearing Officer's Determination dated November 4, 2005 ordered that "[t]he student [be] awarded two school years of compensatory education in the form of after school tutoring and counseling to be provided by Positive Nature, Inc. and funded by DCPS." AR 50. The same document announced that "[t]his is the final administrative decision in this matter." AR 51. The Hearing Officer nonetheless subsequently issued an order in March 2006 purporting to reduce the compensatory education award by six months. HOD 3/22/06, AR 53-54. The Hearing Officer's *sua sponte* amendment of his final compensatory education award is contrary to law.

"[A]s the IDEA makes plain, hearing awards 'shall be final' unless modified through administrative appeal or judicial action." *Reid*, 401 F.3d at 526-527 (quoting 20 U.S.C. § 1415(i)(1)(A)). Because such awards are final, "once a parent challenges an IEP and obtains final relief . . . preservation of that relief requires no further action on the parent's part." *Id.* at 527. Parties to such a hearing may appeal the decision in either state or federal court. 20 U.S.C. § 1415(i)(2)(A). A hearing officer, however, has no right to initiate additional proceedings *sua sponte*. "To the contrary, before any reduction in an adjudicated award of compensatory instruction may take effect, the school district—the party whose failures, after all, necessitated awarding relief in the first place—must initiate new proceedings before a hearing officer." *Reid*, 410 F.3d at 527.

Both the IDEA itself and DC Municipal Regulations enacted to implement the IDEA provide substantial procedural safeguards. These safeguards include (1) proper notice, 20 U.S.C. § 1415(b)(3), D.C. Mun. Regs. tit. 5, § 3029; and (2) "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." 20 U.S.C. § 1415(h)(2); D.C. Mun. Regs. tit. 5, §§ 3029.3-3029.4.

The Hearing Officer failed to allow either party the opportunity to present additional evidence, witnesses, or argument. This failure violated due process rights clearly defined in the IDEA. 20 U.S.C. § 1415(h)(2).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment should be granted.

Dated: August 16, 2006                By: /s/ Ankur J. Goel
                                          Ankur J. Goel, D.C. Bar #451594
                                          McDermott Will & Emery LLP
                                          600 13th Street, N.W.
                                          Suite 400
                                          Washington, D.C. 20005
                                          Tel.: (202) 756-8000
                                          Fax: (202) 756-8087

                                          Attorney for Petitioner

WDC99 1271641-3.009975.0135

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| D.A. | ) |
|  | ) |
|       Plaintiffs | ) |
|  | ) |
| v. | )  Civ. Action No. 06-192 (ESH) |
|  | ) |
| DISTRICT OF COLUMBIA, et al. | ) |
|       Defendants. | ) |
|  | ) |
|  | ) |

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.    D.A. is a 17 year old boy.  AR 71.

2.    D.A. is diagnosed with chronic paranoid schizophrenia, has had auditory and visual hallucinations, and engaged in magical thinking, including at school.  AR 71-77.

3.    D.A. has been assessed as functioning in the borderline cognitive range and has significant speech and language deficiencies.  AR 71-77.

4.    D.A. was prenatally exposed to drugs and alcohol.  AR 84.

5.    D.A. was abandoned by his parents and adopted at the age of three months.  AR 84.

6.    D.A. has exhibited severe emotional and psychological difficulties.  AR 71-77.

7.    DCPS first identified and initiated the process of evaluating D.A. for a disability in January 2001, when D.A. was repeating the 4th grade, and after he had already repeated the 3rd grade.  AR 306-310.  D.A. was 12 at this time.  AR 310.

8.    DCPS should have identified D.A.'s developmental language difficulty as early as kindergarten.  Iseman Test., AR 348-349.

9.    At the latest, DCPS should have identified and evaluated D.A. when he was in 2nd grade, in the 1996-97 school year.  Iseman Test., AR 305, 349-350.

10.    In 2nd grade (SY 1996-97), D.A.'s SAT -9 student report showed he was below basic in all areas, meaning he has "little or no mastery of fundamental knowledge and skills" for his grade level.  AR 153-155; 305.

11.    In 3rd grade (SY 1997-98), D.A. displayed disruptive behaviors, such as inappropriate socialization and lack of self-control, as well as a lack of focus when not under close supervision. AR 160; 306-307.  He also displayed below basic scores in all areas on his SAT-9s and was below the instructional level in reading and math in each of the advisories. AR 151-161.  D.A. was retained to repeat third grade the following year.  AR 306.

12.    In his 2nd attempt at 3rd grade (SY 1998-99),  D.A. showed no improvement, struggled academically and behaviorally, and was in danger of being retained again at the end of the year. AR 308.   He obtained below basic in writing, listening, speaking, and social studies and unsatisfactory marks for most of his work habits and personal/social skills.  AR 164-166.  He nonetheless proceeded to 4th grade.  AR 308.

13.    In 4th grade (SY 1999-2000), D.A.'s teacher was "very concerned" about his classroom behavior, AR 169-171, and D.A. was unable to master even a "basic working knowledge of skills/concepts" and "seldom produce[d] work of satisfactory quality."  *Id.*  DCPS retained D.A. in 4th grade for the second time, but did not evaluate or identify him.  AR 309.

14.  Finally, in his 2nd attempt at 4th grade at age 12, DCPS finally referred D.A. for evaluations in January 2001.  AR 310.

15.  Psychological evaluations revealed D.A. was functioning at a borderline level intellectually and suffering psycho-social and emotional difficulties.  AR 91.  A speech and language evaluation indicated D.A. had a severe language disorder.  AR 78-86; 312-314.  Nonetheless,

DCPS did not propose an Individualized Education Plan ("IEP"), or provide any services, until the following school year, in September 2001. AR 322.

16. Despite finally identifying D.A. as suffering from emotional disturbance and language disorder, DCPS failed to provide an adequate FAPE during each school year between September 2001 and May 2005.

17. The initial IEP, dated September 19, 2001 (AR 93-105), was inadequate. It included no counseling or social/emotional goals, or even an acknowledgment of D.A.'s significant difficulties with social/emotional functioning, despite DCPS' own evaluations recommending such. AR 75-77; 84-88; 322-324. The IEP did not contain a Behavioral Intervention Plan ("BIP") or provide Extended School Year ("ESY") services. AR 322-324. The IEP provided only five hours of special education in speech and language, when he needed special education services in reading, math, written expression, social/emotional, and speech and language. AR 322-324. *Id.*

18. The second IEP, dated May 15, 2002 (AR 106-117), was inadequate for similar reasons. It again recognized only D.A.'s speech and language impairment, ignoring his social/emotion needs. AR 324-325. Remarkably, DCPS made no provision for counseling or therapeutic interventions, despite the earlier evaluations, and even though D.A had recently been hospitalized because of his psychiatric condition and diagnosed with chronic paranoid schizophrenia. AR 71-74; 324-325. Additionally, the IEP did not provide D.A. with the level of specialized instruction he required, providing only 10 hours when he needed more. AR 324-325. Lastly, the IEP again did not contain a BIP or ESY. *Id.*

19. The third IEP, dated October 2, 2002 (AR 120-127) was inadequate for many of the same reasons. D.A. yet again did not receive enough specialized instruction and the IEP again lacked

a BIP and ESY.  AR 328-332.  Although DCPS did finally recognize D.A.'s social and

emotional problems, it did so by changing D.A.'s classification from speech language

impairment to emotional disturbance.  AR 330-331.  DCPS offered no justification for dropping

D.A.'s speech language impairment classification, and should not have done so.  *Id.*

20.  The hearing officer found the fourth IEP, dated October 3, 2003 IEP for SY 2003-2004 (AR

128-139) inadequate.  AR 46-47.  This hearing officer found this IEP inadequate as written

because it cut D.A.'s specialized instruction in half from 16.5 hours to 8.35 hours and reduced

his counseling by thirty minutes a week from the previous IEP without any explanation or

justification in the Multidisciplinary Team ("MDT") Notes.  AR 46-47.  "The IEP also contained

no speech and language goals and no reading goals."  *Id.*  Additionally, the IEPs "social

emotional goals were not measurable or appropriate."  *Id.*  This IEP also lacked a BIP.  *Id.*

21.  The October 3, 2003 IEP was also improperly implemented.  D.A. did not receive the speech

and language therapy and psychological counseling related services required in the IEP.  AR

191-192; 332-334.  Moreover, D.A.'s school placement during 2003-2004 also constituted a

denial of a FAPE.  D.A. did not make educational progress, as indicated in his 2003-2004 Report

Card (AR 181).  *Id.*  D.A. suffered a serious left leg fracture in early September 2003 when he

was pushed down the steps by another student at Shaw J.H.S. and was not able to return to

school until January 2004 because of the injury.  *Id.*

22.  DCPS  did not provide D.A. the services required in his IEP during his recovery period.  *Id.*

23.  The hearing officer found the fifth IEP, dated November 18, 2004 IEP for SY 2004-2005

(AR 140-149) inadequate as written because it was not "based on current levels of educational

performance" and did not contain the social emotional goals necessary for a student classified

with an emotional disturbance.  AR 46.

24. The November 18, 2004 IEP was also inadequately implemented. *Id.* D.A.'s report card (AR 181) indicated he was only receiving ten hours a week of specialized instruction even though his IEP called for fifthteen hours a week. AR 46. DCPS made no showing that D.A. received the services required by his IEP. *Id.*

25. D.A.'s school placement during 2004-2005 also constituted a denial of a FAPE. *Id.* D.A.'s placement at Francis J.H.S. was inappropriate because he did not make educational progress, due to a lack of services available and an inability to cope with D.A.'s fears and insecurities. D.A. felt very insecure and was typically afraid to go to class or lunch, and the principal at Francis allowed him to spend most of the day with the security guard or in the principal's office, the only places where D.A. felt safe. (HOD of May 4, 2005, Findings of Fact #4). D.A.'s teachers at Francis recognized the school was not an appropriate placement for him. AR 344-347.

26. In March, 2005, D.A.'s mother filed a request for a hearing. AR 2-7.

27. DCPS presented <u>no</u> evidence at the hearing, held on May 2, 2005.

28. The Hearing Officer found D.A.'s current IEP and school placement inappropriate and a denial of a FAPE, AR 35-37, and ordered D.A. placed at the High Road Upper School. AR 37. The Hearing Officer ordered counsel for both parties to submit legal memoranda on the issue of compensatory education, and held another hearing. *Id.*

29. The parties submitted written arguments regarding compensatory education on May 9, 2005. Neither party argued to apply a 2 year statute of limitations, and DC did not raise a statute of limitations defense. AR 13-15; 16-33.

30. DCPS did not appear at and presented no evidence at the compensatory education hearing, held on October 26, 2005.

31.  The Hearing Officer awarded D.A. two years of compensatory education to remedy DCPS' failure to provide D.A. a FAPE from March 25, 2003 until May 10, 2005, when he placed at High Road.  AR 47-50.  However, the Hearing Officer did not award compensatory education for violations prior to March 25, 2003.  *Id.*

32.  After plaintiffs appealed to this court, the Hearing Officer *sua sponte* issued an order that purported to reduce the compensatory education award to 18 months.  AR 53-54.  DCPS did not request this reduction.  *Id.*  The Hearing Officer did so without holding a hearing.  *Id.*

33.  D.A. needs 7200 hours of compensatory education to remedy the violations from the period 1996-1997 to May 10, 2005.  Iseman Test., 350-354.

Dated: August 16, 2006                          By:  /s/ Ankur J. Goel
                                                               Ankur J. Goel, D.C. Bar #451594
                                                               McDermott Will & Emery LLP
        600 13th Street, N.W.
        Suite 400
        Washington, D.C. 20005
        Tel.: (202) 756-8000
        Fax: (202) 756-8087

        Attorney for Petitioner

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| D.A. | ) |
|       Plaintiffs | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, et al. | )   Civ. Action No. 06-192 (ESH) |
|       Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**[PROPOSED] ORDER**

Upon consideration of Plaintiffs' Motion for Summary Judgment, and the Memoranda in Support of and Opposition to the Motion, it is hereby ordered:

1. Plaintiffs' Motion for Summary Judgment is **GRANTED**;

2. Defendants shall provide 7200 hours of compensatory education to D.A. and extend his eligibility to receive services under the Individuals With Disabilities Education Act;

3. Plaintiffs are awarded attorneys' fees, expenses, and costs. Plaintiffs shall file their requested fees, expenses, and costs with the court by _____.

Dated: _____                    _____
                                            United States District Judge